R. W. CARDELLA, Appellant,

v.

SEITHER & CHERRY COMPANY and Central National Bank & Trust Company, Appellees.

John SCHNEIDER, Appellant,

v.

SEITHER & CHERRY COMPANY and Central National Bank & Trust Company, Appellees.

No. 2–58916.

Supreme Court of Iowa.

June 29, 1977.

James P. Hoffman and Michael P. Short, Keokuk, for appellants.

Norman, Younggren & Webber, Keokuk, for appellees.

Heard by MOORE, C. J., and MASON, REES, UHLENHOPP and HARRIS, JJ.

UHLENHOPP, Justice.

This appeal involves the issue of whether the interests of two employees in a profit sharing plan were fully vested.

The employer, Seither & Cherry Company, established a profit sharing plan for certain employees, effective March 31, 1966. Central National Bank & Trust Company was and is trustee of the trust under the plan. Plaintiffs Ronald W. Cardella and John Schneider were employees of Seither & Cherry. Cardella joined the plan when he commenced employment in 1968 and Schneider joined when Seither & Cherry established the plan in 1966.

Cardella and Schneider severed their employment with Seither & Cherry in 1972. At that time Cardella's plan account had been credited in the amount of $15,462.20. He was paid $6,186.08 or 40% of the total— 10% for each of the four years he participated in the plan. At Schneider's termina-

tion of employment, his account had been credited in the amount of $8,710.53. He was paid $5,403.39 or approximately 60%—10% for each of the six-plus years he participated in the plan.

In the ordinary case, the plan provides for vesting of 10% of a plan account for each year of participation up to ten years. But Cardella and Schneider claim their accounts were 100% vested at the time they terminated their employment, by virtue of paragraphs 6.1 and 6.1.4 of the plan as amended in 1968. Those paragraphs state:

> 6.1: The profit sharing account of a Participant shall mature and be fully vested in him on his severance of employment for any of the following reasons:
>
> . . .
>
> 6.14: Discontinuance of contributions of the Company to the plan or by final termination of the Plan by the Company.

Cardella and Schneider claim Seither & Cherry made contributions to the plan in the fiscal years ending in 1966 through 1970 but failed to contribute in the fiscal years ending in 1971 and 1972. This failure to contribute, they claim constituted a "discontinuance of contributions" or "final termination" by Seither & Cherry within the meaning of paragraph 6.1.4, causing full vesting of their plan accounts.

Cardella and Schneider sued for the full amounts of their accounts. The parties tried the case by equity proceedings. The trial court held that Seither & Cherry was under no obligation to make contributions to the plan each year; that Seither & Cherry had not discontinued payments or terminated the plan within the meaning of the plan; and that the trustee paid Cardella and Schneider the proper amounts. Cardella and Schneider appealed.

Our review is de novo. We give weight to the fact findings of the trial court but are not bound by them. Rule 344(f)(7), Rules of Civil Procedure.

Cardella and Schneider do not now argue that Seither & Cherry "terminated" the plan. Hence the issue for determination by us is whether the failure of Seither & Cherry to make contributions during the fiscal years ending in 1971 and 1972 constituted a "discontinuance of contributions" within the meaning of paragraph 6.1.4 of the plan. In making this determination, we consider the reason for the 1968 amendment which added paragraph 6.1.4 to the plan. The reason appears to have been to qualify the plan for deductibility under the Internal Revenue Code. The code provides in 26 U.S.C. § 401(a)(7):

> A trust shall not constitute a qualified trust under this section unless the plan of which such trust is a part provides that, upon its termination or upon complete discontinuance of contributions under the plan, the rights of all employees to benefits accrued to the date of such termination or discontinuance, to the extent then funded, or the amounts credited to the employees' accounts are nonforfeitable.
>
> . . .

See also 26 C.F.R. § 1.401(7).

The regulations under § 401(a)(7) furnish a definition of "complete discontinuance" in this context, in 26 C.F.R. § 1.401–6(c):

> For purposes of this section, a complete discontinuance of contributions under the plan is contrasted with a suspension of contributions under the plan, which is merely a temporary cessation of contributions by the employer. A complete discontinuance of contributions may occur although some amounts are contributed by the employer under the plan if such amounts are not substantial enough to reflect the intent on the part of the employer to continue to maintain the plan. The determination of whether a complete discontinuance of contributions under the plan has occurred will be made with regard to all the facts and circumstances in the particular case, and without regard to the amount of any contributions made under the plan by employees.

See Rev.Rul. 74–419: I.R.B. 1974–35, 7 ("in the case of a profit sharing plan, it is not necessary that the employer contribute every year or that he contribute the same amount or contribute in accordance with the same ratio every year").

The minutes of the meetings of the board of directors in which the decisions were made not to contribute in the years in question show relevant factors. First, the board discussed the question of contributions to the plan and decided that contributions should be foregone and cash bonuses would instead be paid to the employees in the years in question. In at least one of the years, Cardella himself, then president of Seither & Cherry, made the motion to forego contributions in favor of bonuses. Second, Seither & Cherry was, for the years in question, suffering what was termed a "close cash position." These factors indicate the decisions not to contribute in favor of cash bonuses were consciously made on the basis of temporary budgetary considerations rather than permanent factors. Contributions were resumed in 1973. Statements by Cardella show he considered that the plan continued in existence. The trial court appears to have been right in finding that a temporary suspension of contributions occurred rather than a "[d]iscontinuance of contributions" within the meaning of paragraph 6.1.4. We note that we are dealing with a profit sharing trust, which does not necessarily possess the regularity of contribution to the trust as is usually found with a pension trust.

Cardella and Schneider argue that the suspension constituted a discontinuance of contributions because Seither & Cherry was obligated to contribute to the plan whenever it earned a profit during the year, and it earned profits in 1971 and 1972. But a review of the plan reveals no such obligation. Paragraph 4.3 of the plan states:

The Company shall determine the amount of *any contribution* to be made by it in this Trust under the terms of the agreement . . .. The Company's determination of such contribution shall be binding on all Employee Participants, the Committee, the Trustee, and the Company . . .. (Italics added.)

And the description of the plan which accompanied the plan and was sent to all participating employees states:

The Company expects this plan to remain effective permanently. However, it reserves the right to amend the plan and reduce, suspend or discontinue its contribution thereunder in the event of business necessity.

The evidence reveals no fraud, bad faith, or arbitrary conduct on the part of Seither & Cherry. See *Powers v. Fisher Controls Co., Inc.,* 246 N.W.2d 279 (Iowa). The cessation does not appear to have been a "discontinuance" within the meaning of the plan. In holding that Cardella and Schneider were entitled to 10% a year of the amount in their accounts in full acquittance, the trial court decided the case properly. The unvested portions of the profits credited to the Cardella and Schneider accounts will thus redound to the benefit of the other beneficiaries of the trust.

AFFIRMED.