Burke, J.
The plaintiff, a former employee of the defendant (Du Pont), brought this suit to recover an amount standing to his credit in the defendant’s retirement fund, made up of payments made by Francis I. Du Pont and Company, stockbrokers, to a bank as the trustee of their employees’ retirement fund (the Fund). The Fund was administered under a plan by a three-man board (the Board) on which three Du Pont partners sat. Under article VI of the plan former employees who were discharged for dishonesty lost all rights to the amounts theretofore credited to their account in the Fund.
On this appeal from an order of the Appellate Division which affirmed a judgment of the Supreme Court entered in favor of the plaintiff after a non jury trial, it is the defendants’ position that since the Board found that Gitelson was discharged for “ dishonesty” he is not entitled to receive any payment from the Fund. We think the evidence before the Board and the terms of the pension plan (arts. VI and VII) compel agreement.
The interpretation and construction of such documents as contracts and trust instruments are matters properly treated as questions of law and are reviewable by this court (see Cohen and Karger, Powers of the New York Court of Appeals, pp. 461-462; New Era Homes Corp. v. Forster, 299 N. Y. 303).
Article VII of the pension plan which is before us and which is the instrument governing the rights of the plaintiff states that the Board is vested with the sole authority to determine all matters relating to an employee’s right to receive retirement payments. There can be no doubt that the question of whether or not an employee has been dismissed for dishonesty is one that is a “ related matter incidental ’ ’ to his right to receive a pension and also one “ related ” to the operation of the plan. The rights of the plaintiff under the plan are contract rights and are limited by the provisions of the contract. Surely if we are to enforce the contract which the plaintiff must rely on, we cannot close our eyes to the fact that, according to its terms, the rights of a former employee to receive pension payments are lost when the Board has found that he does not qualify for them because he has been dis *49 charged “ for dishonesty.” Here the Board has determined that the plaintiff was dismissed for dishonesty and, by the provisions of article VII, “ The determination of the Retirement Board as to all such matters shall be conclusive.”
A pension fund with provisions similar to the plan was so construed in the case of Menke v. Thompson (140 F. 2d 786, 791 [8th Cir., 1944]). There the claimants of pension rights were denied recovery on the ground that the pension board had ruled them ineligible to receive a pension under the provisions of the fund. It was held that the burden was upon the claimant to show that the board’s ruling was motivated by bad faith, or arrived at by fraud or arbitrary action. The same reasoning has been adopted by this court in Pasternack v. Diamond (3 A D 2d 422, 423 [1st Dept.], affd. 5 N Y 2d 770) and in cases in our courts, as well as in those of other jurisdictions (Burgess v. First Nat. Bank, 219 App. Div. 361; Korb v. Brooklyn Edison Co., 258 App. Div. 799; McNevin v. Solvay Process Co., 32 App. Div. 610; Doobin v. Kelly, 5 Misc 2d 123; Bailey v. Rockwell Spring & Axle Co., 13 Misc 2d 29; Molburg v. Hunter Hosiery, 102 N. H. 422; Hurd v. Illinois Bell Tel. Co., 136 F. Supp. 125; Siegel v. First Pennsylvania Banking & Trust Co., 201 F. Supp. 664). The rule then is that, without a showing of such dereliction on the part of the Board, its decision is final and conclusive. As noted above an employee’s right to receive payment under the plan is a conditional contract right and when the plaintiff became a party to the contract by taking employment under it he was bound by these conditions. In this respect the courts below have failed to justify their reversal of the Board’s decision by demonstrating that it was arbitrary or capricious, that it was a product of bad faith, or even that there was insufficient evidence before the members of the Board at the time that they made their decision. On the contrary, the facts in the record support the Board’s action.
The circumstances surrounding the termination of the employment and the denial of the claim commenced in May, 1957. At that time the plaintiff, an officer manager of one of appellant’s branch offices, requested a leave of absence, stating that he was required to appear before the Securities and Exchange Commission on matters not connected with the firm. The *50 leave of absence was refused and the firm pressed the respondent for an explanation as to the business matters that necessitated his appearance before the Securities and Exchange Commission. He at first refused to give any explanation and then agreed to appear at the main office of the firm with his attorney on the twenty-seventh of May. He failed to appear on that day and was suspended from the firm. In a letter from one of the partners he was informed that unless he appeared on the twenty-ninth of May he would face dismissal. He did not appear on that day. Thereafter he received a letter from the firm informing him that his employment had been terminated.
Sometime after the plaintiff had been discharged, the firm learned that he had been indicted for larceny in connection with the manipulation of funds of its customers. He pleaded guilty to the indictment and was sentenced to 15 to 30 months in prison. This was the business matter in which the Securities and Exchange Commission had been interested. It was upon these facts that the Board decided that Gitelson was not entitled to a pension.
The recital of the facts alone indicates that this is not a situation in which an employee has been discharged for insubordination or incompetence, or some other “ honest ” defect in his work, and is later discovered to have dealt dishonestly with the company or some of its customers. Under such circumstances it could not be said that there was a causal connection between the dishonesty and the discharge. Here, however, it was the very dishonest acts in which the plaintiff was a participant which were mentioned in the indictment and which led to the Securities and Exchange Commission investigation that were the proximate cause of his discharge.
Plaintiff argues that the “ dishonesty ” was not directed at the company and is not, therefore, covered by the plan’s restrictions. To show the lack of merit in this contention, it is only necessary to consider that the employer is a stockbroker-age firm and that in such a business the term ‘ ‘ dishonesty ’ ’, used as it is here, would certainly include dishonesty involving a customer of the employer, i.e., the acts upon which the plaintiff was indicted, as much as, if not more than, dishonesty directed against the firm itself. Judge Cabdozo, speaking for this court, defined the term “ dishonesty” in a similar context *51 as follows: “ The question is perhaps closer whether the act within the meaning of the policy must be said to be ‘ dishonest,’ for dishonesty within such a contract may be something short of criminality * * *. The appeal is to the mores rather than to the statutes. Dishonesty, unlike embezzlement or larceny, is not a term of art. Even so, the measure of its meaning is not a standard of perfection, but an infirmity of purpose so opprobrious or furtive as to be fairly characterized as dishonest in the common speech of man. ‘ Our guide is the reasonable expectation and purpose of the ordinary business man when making an ordinary business contract ’. ” (World Exch. Bank v. Commercial Cas. Ins. Co., 255 N. Y. 1, 5.)
For all these reasons we believe the courts below improperly exercised their power of review and that the Board’s findings ought to be enforced.
Accordingly, the order of the Appellate Division and the judgment of Supreme Court are reversed, the complaint dismissed and judgment for the defendants directed, with costs.
Chief Judge Desmond and Judges Fuld, Van Voorhis, Scileppi, Bergan and Keating concur.
Order reversed, with costs in all courts, and complaint dismissed.