**Lawrence POWERS, Appellee,**

v.

**FISHER CONTROLS COMPANY, INC., et al., Appellants.**

**No. 2–57438.**

Supreme Court of Iowa.

Oct. 20, 1976.

Cartwright, Druker & Ryden, Marshall-town, for appellants.

Fulton, Frerichs; Nutting & Kennedy, Waterloo, for appellee.

Heard by MOORE, C. J., and RAWL-INGS, REES, REYNOLDSON and McCOR-MICK, JJ.

REES, Justice.

This is an appeal from a decree in an action for declaratory judgment by which plaintiff was adjudged to be entitled to pension benefits in accordance with a contract plan administered by a pension committee. Plaintiff was further adjudged to be entitled to health, accident and life insurance benefits in accordance with the terms of said plan. Initially, the pension committee denied benefits to plaintiff, finding him ineligible by virtue of his having been hired subsequent to his 60th birthday, and being therefore ineligible to benefits. Trial court overturned the decision of the pension committee and awarded benefits to plaintiff Powers. We reverse.

The entitlement of Powers to pension benefits or other benefits is dependent upon an interpretation of the contract and specifically of the words "last date of hire." Powers applied for work with defendant Fisher Controls Company, Inc., on March 27, 1967. At the direction of the Company he submitted to a physical examination on the following day, March 28. On March 29 plaintiff received a letter from the Company notifying him to report to work the following Monday, April 3. Plaintiff attained age 60 on April 1, 1967, just two days prior to his first work day.

The pension plan under scrutiny here was first effective on January 1, 1958 when the predecessor Company of defendant Fisher Controls Company, Inc., (namely, Fisher Governor Company) established a pension plan for its employees. Effective August 1, 1968 the retirement plan as the result of a collective bargaining agreement was modified and has been amended subsequently. The definitions contained in paragraphs 1.1 and 1.2 of the plan, however, remain unchanged since the adoption of the original contractual pension plan adopted in 1958 as detailed above.

Paragraph 1.1 of the pension plan contract provides as follows:

"The term 'Employee' as used herein means a person in regular, full-time service with the Company who is a member of the collective bargaining unit at the

Company's Marshalltown, Iowa, location and who was last hired by the Company prior to attainment of his 60th birthday. Each Employee who was in the service of the Company on December 31, 1958, shall be covered hereunder as of such date. Each other person shall be covered hereunder as of the first day of the calendar month next following his last date of hire as an Employee."

Paragraph 1.2 of the plan provides as follows:

"The Term 'service' means an Employee's last period of continuous, uninterrupted employment with the Company, both as a bargaining unit and non-bargaining unit employee, including leaves of absence, from his last date of hire to his retirement date.

"Any absence from active employment with the Company, including, but not limited to, absence by reason of discharge or resignation, which is not deemed a leave of absence or a layoff as such terms are defined in Section 1.3 hereof, shall be considered, for all purposes of the plan, a termination of service."

Paragraph 5.4 of the plan provides:

"In order to effectuate the purposes of the plan, the committee will have the power to construe the plan and to make equitable adjustments for any mistakes or errors made in the administration of the plan, and all such actions or determinations made by the committee in good faith will not be subject to review by anyone. The committee shall likewise have the authority to make such rules and regulations and to take such action as may be necessary to carry out the provisions of the plan, and will, subject to the provisions of the plan, decide any question arising in the administration, interpretation and application of the plan, which decisions shall be conclusive and binding on all parties.

"The pension committee may delegate as much of its ministerial duties as it deems expedient."

The pension committee denied benefits to plaintiff after finding that his "date of hire" was April 3, 1967, equating date of hire with start of employment. The trial court recognized a general rule which dictates deference to a determination by a pension board, where the contract itself provides for finality in board decisions, unless the determination is arbitrary, or made fraudulently or in bad faith. Nevertheless, the court adopted a minority view and overturned the committee decision on the rationale that the decision of the committee was not within the bounds of reasonable judgment.

Defendants claim their entitlement to a reversal of the decree of the trial court on the following stated issues:

A. Whether the trial court had jurisdiction of the subject matter of the action in the absence of a showing that the interpretation placed upon the terms of the pension plan by the retirement committee was arbitrary, capricious, fraudulent or made in bad faith.

B. Whether the interpretation placed upon the terms of the pension plan by the retirement committee is so lacking in any rational foundation that such interpretation is arbitrary, capricious, fraudulent or the result of bad faith.

■ I. We interpret the defendants' first issue stated as being directed toward an inquiry as to what standard of review should be applied to decisions by private pension boards and is apparently a question of first impression in this jurisdiction.

Under paragraph 5.4 of the contract set out above, the pension committee has, and had, the power to construe the plan to make equitable adjustments for any mistake or errors made in the administration thereof, and all actions or determinations made by the pension committee *in good faith* are not subject to review by anyone. Said paragraph further provides that subject to the provisions of the plan the committee is empowered to "decide any question arising in the administration, interpretation and application of the plan *which decision(s) shall be conclusive and binding on all parties.*" (italics supplied.)

The general rule in other jurisdictions so far as we are able to marshal the authorities is to uphold the determination of the pension board unless fraud, bad faith or arbitrary action is established. 42 A.L.R.2d 461, 472; *Menke v. Thompson*, 140 F.2d 786 (8th Cir. 1944); *Gitelson v. DuPont*, 17 N.Y.2d 46, 268 N.Y.S.2d 11, 215 N.E.2d 336; *Lano v. Rochester Germicide Co.*, 261 Minn. 556, 113 N.W.2d 460; *Boyd v. Fraser*, 382 F.Supp. 418 (E.D.Mich.1974).

Judicial review of board decisions, despite the provision for "finality" embraced in a contract, is an attempt to insure that the parties were afforded an independent judgment by a fair and impartial tribunal. Such review is necessitated to insure that the contract does not unjustly create illusory promises upon which the employer may renege at will. However, where two parties recognize the advantages an administrative board brings to contract decisions and choose to grant to that board the power to interpret and enforce the same, a court should not substitute its judgment or broadly review the board's determination. To operate otherwise would be to destroy the effectiveness of the board which brings to the field expertise, expeditiousness and efficiency, as well as finality to its decisions. The interjection of a court into a situation where the parties have agreed to be bound by the action of the board can do little but create uncertainty and confusion.

It is recognized that administrators develop an expertise in their respective fields. Boards which administer pension plans work frequently with contracts and develop a familiarity with the terms thereof which a court cannot hope to equal. We agree that courts should limit review of pension board decisions where parties agree to vest the board with authority to make final decisions. Only upon a showing of fraud, bad faith or arbitrary action will we overturn the decision of the committee which is final pursuant to contract.

II. The trial court in this case erroneously applied a more liberal standard of review than the arbitrariness standard we adopt herein. Trial court relied on the standard set out in *Russell v. Princeton Laboratories, Inc.*, 50 N.J. 30, 231 A.2d 800. In *Russell* the New Jersey Supreme Court applied a trustee standard to the advisory committee of a profit-sharing trust fund, reversing the action of the committee basing its reversal on a "bounds of reasonable judgment" standard. The New Jersey Supreme Court, in a well-reasoned opinion, points to the factors which encouraged liberal judicial review. The advisory committee in *Russell* had a substantial financial interest in the trust, and no hearing preceded the decision of the committee.

In the matter before us here there are no allegations of committee interest in the pension fund and no factual controversy necessitating a hearing. Thus in review of the committee's decision the function of the trial court was to focus on a single issue: whether the pension committee acted arbitrarily in denying benefits to the plaintiff Powers by equating "date of hire" with the commencement of employment.

III. There is some difficulty in ascertaining the distinction between "reasonableness" and "arbitrariness" as different standards of review, as the standards at times may seem to overlap. A court may view the issues first and adopt the proper standard in retrospect. See *Grant v. Fritz*, 201 N.W.2d 188 (Iowa 1972). However, standards of review are simply standards which the court must even-handedly apply in a myriad of fact situations. The difficulty in ascertaining how limited review should be does not permit a court to substitute its judgment for the judgment of the administrative body.

Arbitrary means without rational basis. Action is not arbitrary when based on a candid judgment of the facts. *Grant v. Fritz, supra*, 201 N.W.2d at 197. Arbitrary action has been defined as a "willful and unreasonable action, without consideration and in disregard of the facts or circumstances of the case." *Markwardt v. County Board of Review*, 174 N.W.2d 396, 400 (Iowa 1970).

IV. The pension committee determined that Powers was last hired on April

3, 1967, the date he reported for work. We must determine whether there was a rational basis for this interpretation.

■ "Hire" is not a word of art. However, it is usually associated in direct context with a contract of employment. Webster's Third New International Dictionary defines "hire": "To engage the personal services of for a fixed sum; employ for wages." Hiring implies a request for employment and a contract for compensation. *Mousseau v. City of Sioux City*, 113 Iowa 246, 84 N.W. 1027, 1028.

Date of hire in our considered judgment may best be defined as the date when the contract was formed. We must determine from the facts which action constituted acceptance of the offer. We have held that a contract is formed between a contractor and a subcontractor who reports to work in response to a letter specifying terms, in which situation acceptance by performance was found. *Commercial State Bank of Independence v. Broadhead*, 212 Iowa 688, 235 N.W. 299.

In this case the pension committee decided that plaintiff Powers accepted employment by reporting to work on Monday, April 3rd. Such a determination and view of the factual situation is not arbitrary, but is based upon a candid interpretation of the contract and an impartial review of the facts. It is not our function to substitute our judgment for that of the committee any more than it was the proper function of the trial court to do so.

We find no arbitrary action in the determination of the pension committee that the date plaintiff was hired by the defendant Fisher Controls Company, Inc., was April 3, 1967. We must, therefore, reverse the trial court and reinstate the determination made by the pension committee.

REVERSED.