MARK R. MECKES, Individually and on Behalf of All Others Similarly Situated, Respondent, v CHARLES CINA, as Administrator of Local 55 UAW Area Wide Retirement Income Fund, et al., Appellants.

Fourth Department, July 10, 1980

## APPEARANCES OF COUNSEL

*Lipsitz, Green, Fahringer, Roll, Schuller & James (Stuart Pohl* of counsel), for appellants.

*Tenney, Smith & Scott (James M. De Voy* of counsel), for respondent.

## OPINION OF THE COURT

MOULE, J.

The issue on this appeal is the correct standard for the courts to apply in interpreting terms of a private pension plan which have been construed by the plan's trustees.

In December, 1968 various employers entered into an agreement with Amalgamated Local Union 55 of the UAW (union) establishing a pension fund for the benefit of employees of the union. By the terms of the agreement, employers make periodic payments into the fund. The pension plan established in accordance with the agreement provides for a lump-sum payment of benefits to "[a]n Employee whose employment with an Employer is terminated". Article I of the agreement defines "Employer" as all employers who have entered into the agreement with the union and defines "Employee" as "all persons covered by Collective Bargaining Agreements between the Employers and the Union". The agreement does not, however, define the term "terminated" as it applies to the lump-sum termination benefit provided for in the pension plan.

In June, 1972 the trustees of the pension plan adopted an interpretation of the term "terminated" which provides that when an employee transfers jobs within the same employer, such employee is not "terminated" for purposes of the lump-sum termination clause, even if the employee assumes a nonunion position and is no longer eligible to participate in the plan. The trustees' interpretation provides that such employee would either: (a) receive the lump-sum termination benefit when he terminates all employment with the employer; or (b) receive his accrued pension benefits upon retirement; or (c) begin accruing further benefits upon transfer back to a job covered by the pension plan. Finally, section 3 of article IV of the agreement provides that "any construction

adopted by the Trustees in good faith shall be binding upon the Union, the Employees, and the Employers".

Plaintiff Meckes was a laborer at Seneca Steel. As such, he was covered by the pension plan, and Seneca Steel made appropriate periodic payments into the plan for his benefit. In August, 1977, however, plaintiff became a foreman at Seneca Steel, a nonunion job, and was no longer covered by the pension fund or entitled to have payments made into it in his name. Although still employed by Seneca Steel, he applied for the lump-sum termination benefit. His application was denied and he commenced this suit individually and on behalf of all others similarly situated for a judgment declaring that he and all others similarly situated are entitled to a lump-sum payment pursuant to the pension plan.

Plaintiff moved for summary judgment and Special Term granted his motion, holding that for the purposes of the lump-sum termination benefit, "terminated" covers those situations where an employee is no longer covered under a collective bargaining agreement and the employer has stopped making contributions to the pension plan on his behalf. Accordingly, Special Term ordered that plaintiff and the class he represents are entitled to a judgment giving them a lump-sum termination benefit under the pension plan. In its memorandum decision, Special Term did not mention the 1972 interpretation dealing with termination promulgated by the plan's trustees but, instead, citing general contract interpretation law, relied on what it found to be the "plain and unambiguous wording of the contract".

On appeal, defendants contend that Special Term applied an incorrect standard in interpreting the terms of the pension plan. In *Gitelson v Du Pont* (17 NY2d 46, 49), the Court of Appeals held that a determination by the board of trustees administering a pension fund, which denies a claimant pension benefits, can be reversed only if the claimant can establish that the trustees' decision was arbitrary and capricious, a product of bad faith, or not supported by sufficient evidence. Plaintiff asserts that the "arbitrary and capricious, bad faith, sufficiency of the evidence" standard applies only to reviews of factual determinations of the trustees and not to the case at hand which concerns the legal issue of construction of a contractual term. An analysis of the *Gitelson* case and subsequent case law, however, shows that this standard applies to both types of trustee actions.

In *Gitelson,* the terms of the pension plan required trustees of the fund to deny an employee a pension if he was discharged for "dishonesty". Further, the plan in *Gitelson,* as does the one at issue here, vested the trustees with sole authority to determine all matters relating to an employee's right to receive retirement benefits and provided that the trustees' determination in such matters shall be conclusive. In *Gitelson* the claimant was discharged for pleading guilty to a Securities and Exchange Commission violation involving the defrauding of a customer of his employer. He asserted that the term "dishonesty" in the plan meant only dishonest acts directed against the employer. The trustees, however, disagreed and interpreted "dishonesty" to include the claimant's actions and denied his application for benefits. The Court of Appeals upheld the trustees' decision and held that the trustees' decision is final and conclusive and cannot be reversed unless the claimant can demonstrate that the board of trustees' decision was arbitrary or capricious, a product of bad faith or supported by insufficient evidence (17 NY2d 46, 49).

By so holding, the Court of Appeals upheld the trustees' interpretation of the disputed terms on the basis that it was not arbitrary and capricious, or a product of bad faith, as well as reviewed the trustees' application of the interpretation to the claimant's particular facts. Federal courts, which apply the same standard of review as New York courts to trustees' determinations regarding pension benefits (see *Rehmar v Smith,* 555 F2d 1362, 1371-1372), have explicitly stated that, where the construction given by trustees to a disputed provision in a pension agreement is reasonable, and thus is not arbitrary and capricious, that construction will be affirmed (see *Rehmar v Smith, supra,* at p 1372; *Rueda v Seafarers Int. Union of North Amer.,* 576 F2d 939, 942; *Miniard v Lewis,* 387 F2d 864, 865, cert den 393 US 873; *Phillips v Unity Welfare Assn.,* 359 F Supp 1147, 1150).

Further, New York courts, since *Gitelson,* have applied the arbitrary and capricious test when reviewing trustees' interpretations of pension plans (see *Smith v Stewart,* 45 AD2d 853, affd 38 NY2d 747; see, also, *Mitzner v Jarcho,* 44 NY2d 39, 46; *Schulman v Jarcho,* 71 AD2d 557).

Accordingly, Special Term should have directed its inquiry toward whether the trustees' interpretation of the termination clause was arbitrary and capricious, a product of bad faith or

unsupported by sufficient evidence, and it is to that inquiry which we now turn.

We find that the trustees' interpretation of the disputed provision is reasonable. Their interpretation is not at odds with the terms of the agreement. The plain language of the lump-sum benefit provision calling for lump-sum benefits to an employee "whose employment with an Employer is terminated" clearly suggests that an employee must sever all ties with an employer before he qualifies for the benefit. The definition of employee as "persons covered by Collective Bargaining Agreements" does not compel an opposite result in that it does not shed light on the meaning of "terminated".

The trustees' construction of "termination" is supported by the dictionary definition of termination and by judicial constructions of similar terms. Black's Law Dictionary (5th ed) defines "termination of employment" as "a complete severance of relationship of employer and employee" and, in *Burns v Stento* (9 NYS2d 736, 742), "termination of employment" was defined as a voluntary quitting by the employee or a discharge by the employer (see, also, *Edelsohn v Singer Mfg. Co.,* 1 Misc 166).

The trustees' construction of the lump-sum benefit is reasonable in that it recognizes the possibility that employees who have taken jobs not covered by the pension plan may change jobs again and regain eligibility.

Finally, since the pension fund is a qualified plan under Internal Revenue Code and Employee Retirement Income Security Act standards, it is relevant to consider the reasonableness of the trustees' interpretation in light of its tax consequences (see *Mosley v National Mar. Union Pension & Welfare Plan,* 438 F Supp 413, 421; *Reilly v Walker Bros.,* 425 Pa 1).

Internal Revenue Service Revenue Rulings make it clear that a pension plan does not qualify for tax-exempt status pursuant to subdivision (a) of section 401 of the Internal Revenue Code (US Code, tit 26), if it permits distributions of the employers' contributions or increments thereon prior to severance of employment or termination of the plan (Rev Rul 74-254, 1974-1 CB 91, 92; Rev Rul 71-437, 1971-2 CB 185; Rev Rul 74-417, 1974-35 IRB 6; Rev Rul 73-533, 1973-2 CB 129; Rev Rul 60-281, 1960-2 CB 146, 147).

In 1974 the Internal Revenue Service ruled on the eligibility of a pension plan for tax-exempt status which presented a

situation very similar to the one presented in the case at bar (see Rev Rul 74-254, 1974-1 CB 91, 92). In that case, a noncontributory pension plan permitted distribution to be made to participants when they were transferred to job locations outside the area covered by the plan and for that reason became ineligible to participate in the plan, although they continued to work for the same employer. The Internal Revenue Service held that a pension plan containing such a provision would not qualify for tax-exempt status and stated that: "the payment of an annuity or lump-sum distribution from employer contributions or increments thereon when an employee ceases his plan participation but continues his employment, is analogous to payments for contingencies such as layoff, sickness, and accident and does not satisfy the requirements of section 1.401-1 (b) (1) (i) of the regulations. Therefore, a pension plan does not qualify if it permits distributions prior to normal retirement and prior to termination of employment or termination of the plan, and this requirement does not depend on whether withdrawals of employer contributions are at the discretion of the employee." (Rev Rul 74-254, 1974-1 CB 91, 92.)

We are unable to distinguish conceptually between the pension plan considered by the Internal Revenue Service and the one presently before us. In the former, the Internal Revenue Service held that the plan did not qualify for tax-exempt status because it permitted employees who were no longer covered by the plan, because of a transfer in job location, to withdraw from the pension fund contributions made by the employer on the employee's behalf while the employee was a participant of the plan. Similarly, in the instant case, were Special Term's order upheld, employees, who were no longer covered by the instant pension plan because of their transfer from a union to a nonunion job, would be permitted to withdraw from the fund at this time the contributions made by their employer on their behalf while they were members of their local bargaining unit. Thus, it appears that the construction of the disputed provision urged by plaintiff and adopted by Special Term would violate Internal Revenue Service regulations and cause the fund to lose its tax-exempt status. In the event the fund were to lose its tax-exempt status, the interest of all the beneficiaries would be impaired and the fund's trustees could very well be liable for a breach of their fiduciary duties which they owe not

only to plaintiff and to the members of his class, but to all the beneficiaries of the fund (see Employee Retirement Income Security Act, §§ 404, 409 [a], US Code, tit 29, §§ 1104, 1109, subd [a]).

In short, a consideration of the fiduciary duties of the trustees and the tax consequences under the law appears to be a sound basis for determining whether or not a particular construction of a pension plan by its trustees is reasonable or not (*Mosley v National Mar. Union Pension & Welfare Plan*, 438 F Supp 413, 421, *supra; Streeter v Board of Trustees of Constr. Laborers Pension Trust for So. Cal.*, 435 F Supp 1168, 1171, affd 586 F2d 148; *Reilly v Walker Bros.*, 425 Pa 1, 12, *supra; St. Paul Elec. Workers Welfare Fund v Cartier*, 283 Minn 212, 218-221) and in light of the fiduciary duties of the trustees and relevant tax consequences presented here, it must be concluded that the trustees' interpretation of the disputed provision is a reasonable one and should be upheld.

Accordingly, we conclude that plaintiff failed to sustain his burden of showing that the trustees' interpretation was arbitrary and capricious, or a product of bad faith or not supported by sufficient evidence (*Gitelson, supra,* at p 49).

Finally, inasmuch as the above analysis applies to all of the members of the plaintiff class and there are no factual issues present, summary judgment should be granted for defendants notwithstanding that they did not request it (see *Marine Midland Bank v Stukey,* 75 AD2d 713; *Howell v Davis,* 58 AD2d 852, affd 43 NY2d 874). Special Term's order should be reversed and summary judgment entered for defendants.

CARDAMONE, J. P., SIMONS, SCHNEPP and DOERR, JJ., concur.

Order unanimously reversed, without costs, summary judgment granted to defendants and complaint dismissed.