Michael J. **ROSENBERG**, Plaintiff,

v.

**SALOMON, INC.,** Defendant.

No. 3–94–CV–446 (WWE).

United States District Court,
D. Connecticut.

Sept. 16, 1997.

Andrew P. Nemiroff of Epstein, Fogarty, Cohen & Selby, Greenwich, CT, for Plaintiff.

Mark Goldstein of Goldstein & Morris, New York City, for Defendant.

### RULING ON CROSS MOTIONS FOR SUMMARY JUDGMENT

EGINTON, Senior District Judge.

Plaintiff, Michael J. Rosenberg, brought a two-count complaint against defendant, Salomon, Inc., alleging wrongful denial of access to income previously earned under common law (Count One) and New York Labor Law §§ 190 *et seq.* (Count Two). Defendant denies plaintiff's allegations and counterclaims against plaintiff for breach of fiduciary duty, breach of the duty of loyalty, and unfair competition.

Before the court are the parties' cross-motions for summary judgment on the Amended Complaint and the Counterclaim. Based on the following, plaintiff's motion will be denied and defendant's motion will be granted in part and denied in part.

### *Background*

From 1975 to 1992, plaintiff was employed by Salomon at Phibro Energy, Inc., a commodities trading subsidiary of Salomon located in Greenwich, Connecticut. At the time of his resignation on February 27, 1992, plaintiff was a Senior Vice–President and Director of Phibro and responsible for the department that traded commodities such as petrochemicals, plastics, coal, coke and fertilizers.

As a Director, plaintiff participated in the Salomon Inc. Equity Partnership Plan for Key Employees ("EPP"), an unfunded deferred bonus program created by defendant in 1990 for "key employees." The purpose of

the EPP, as stated in its introductory paragraph, is to provide participants "with a continuing long-term investment in common stock of Salomon, Inc." so that the participants "have the same motivations and interests as other shareholders of Salomon, Inc" and "analyze the activities in which they personally are involved in terms of the overall benefit of such activities to Salomon Inc and its affiliates and subsidiaries as well as the effect that such activities will have on the participants' individual departments or direct compensation."

Stock awards are purchased yearly under the EPP with a portion of the participant's bonus calculated in terms of a percentage of the participant's total compensation. The stock is placed in a trust account in the employee's name with State Street Bank & Trust Company. Awards are paid out to the employee upon the occurrence of a "Realization Event" which is generally the expiration of a 5–year investment period. Subject to the payment provision and certain exceptions, an award is vested in the participant when made. One of those exceptions is "if, prior to the Realization Event for that Award..., the Participant's employment with a Company or an Affiliate is (or is deemed to have been) terminated by such Company or Affiliate for Cause." In such a case, the award is forfeited. "Cause" is defined as, among other things, the breach of the participant's fiduciary duties by the pre-termination solicitation of employees or customers or the unauthorized removal of documents or materials from the premises relating to any company or affiliate or its customers.

Under the EPP, the Compensation Committee of defendant's Board of Directors is given full authority "to administer the Plan, including authority to interpret and construe any provision of the Plan...." Determinations of the Committee are to "be final and binding on all parties." The Plan also provides that if "subsequent to a Participant's voluntary termination of employment or involuntary termination of employment without Cause, it is discovered that the Participant's employment could have been terminated for Cause, such Participant's employment shall, at the election of the Committee in its sole discretion, be deemed to have been terminated for Cause."

During his employment, plaintiff received an annual compensation comprised of salary and bonus income. In 1990, plaintiff's salary was $250,000 and bonus was $950,000. In 1991, plaintiff's salary was $250,000 and bonus was $150,000. Under the EPP, $226,-072.80 of plaintiff's 1990 bonus was used to purchase 7,883.6385 shares of Salomon stock and $30,969.32 of plaintiff's 1991 bonus was used to purchase 917.6094 shares of stock. These shares were placed in a trust account in plaintiff's name with State Street Bank & Trust Company. As of June 30, 1992, the market value of plaintiff's account was $310,-286.86.

On Friday, February 27, 1992, plaintiff, along with three traders who reported to him, Christopher Bake, Robert Wolkwitz, and Paul Sheck, resigned from Phibro and started a competing venture with the firm Metallgesellschaft Corp. (MG), called MG Petrochemical, the following Monday. Randall Bitonte, Phibro's assistant operations manager for petrochemicals, also resigned as well as four Phibro international petrochemical traders, and later joined MG.

On March 3, 1993, the Compensation Committee converted plaintiff's resignation to a termination for cause and forfeited plaintiff's benefits under the EPP based on its finding that plaintiff breached his duty of loyalty by pre-termination soliciting of at least one employee of Phibro. Plaintiff was notified of the Committee's action by letter dated March 10, 1993 from Robert H. Mundheim, defendant's General Counsel.

Plaintiff moves for summary judgment arguing that no genuine factual issues exist and as a matter of law, he is entitled to the stock award amounts because they represent "wage" or "wage supplements" previously earned and improperly withheld by defendant in violation of common law tenets and New York Labor Law. Plaintiff argues that because the amounts were already earned and awarded, the EPP does not govern this matter and, in any event, it is unenforceable because it does not "appear" to have been properly adopted by Phibro. If the court

finds the EPP enforceable, plaintiff asserts, in the alternative, that the court should strike the forfeiture and "for cause" provisions because they violate New York agency law and public policy prohibiting forfeiture of compensation earned before any alleged wrongdoing. Finally, plaintiff claims that defendant's retroactive termination for cause and forfeiture of those monies was arbitrary and capricious and in bad faith.

Defendant avers in its cross motion for summary judgment that it acted in good faith and pursuant to the terms of the EPP in converting plaintiff's resignation to a termination for cause and that this determination is binding as a matter of law given the discretion of the Committee under the terms of the EPP. Defendant also argues that New York Labor Law is inapplicable because the award amounts are not earned "wages" but are part of a discretionary bonus subject to certain conditions for payment with which plaintiff did not comply. Finally, defendant claims that the forfeiture provisions do not violate New York agency law or public policy.

Defendant also asserts that a grant of summary judgment with respect to its counterclaims against plaintiff is proper because no genuine issues of material fact exist that plaintiff solicited Phibro employees to leave with him to join a competitor and took other disloyal actions to harm Phibro's business.

## Discussion

### I. Plaintiff's claim for wages

#### A. Is the EPP enforceable?

█ The court will address first plaintiff's argument that since he was already granted the stock awards, the EPP no longer governs his claim for those amounts. Generally, the terms of the bonus plan govern an employee's right to a bonus. *Tuttle v. Geo. McQuesten Co. Inc.*, 227 A.D.2d 754, 642 N.Y.S.2d 356 (3d Dept.1996). Here, the stock amounts were already awarded and placed in a trust account in plaintiff's name. However, the EPP sets forth the terms under which the amounts are payable to the participant. Payment is to be made after expiration of the five-year investment period, provided that the forfeiture provisions have not been triggered. Accordingly, the terms of the EPP control plaintiff's claim to the stock awards.

As to plaintiff's claim that it "appears" that the EPP was not properly adopted, plaintiff has failed to offer any evidentiary support for this claim. "[M]ere conclusory allegations, speculation or conjecture will not avail a party resisting summary judgment." *Cifarelli v. Village of Babylon*, 93 F.3d 47, 51 (2d Cir.1996).

█ With regard to plaintiff's argument that the "for cause" and forfeiture provisions should be stricken because they are violative of New York rules of agency and public policy, plaintiff cites, among other cases, *Herman v. Branch Motor Express Co.*, 67 Misc.2d 444, 323 N.Y.S.2d 794 (1971). In *Herman*, the court found that an employee who stole cargo did not forfeit vacation credits and wages earned during his 14 years of faithful service. The court held that under New York law, a faithless servant can be deprived of his right to compensation but only for the period of his faithlessness. *Id.* at 795. *See also Musico v. Champion Credit Corp.*, 764 F.2d 102 (2d Cir.1985)(employee entitled to compensation for properly performed services but not for disloyal acts).

Plaintiff claims that any alleged wrongdoing occurred in 1992, after the stock awards were granted in 1990 and 1991. However, in *Bon Temps Agency Ltd. v. Greenfield*, 184 A.D.2d 280, 584 N.Y.S.2d 824 (1st Dept.1992), decided after *Herman* and *Musico*, the employer terminated an employee, a placement manager, who competed with her employer while still employed. The employer commenced an action against its former employee to recover damages for, *inter alia*, breach of fiduciary duty. The employee counterclaimed for fees due for placements made while she was employed by the agency. The court reversed the trial court's denial of summary judgment, holding that the evidence established that the employee was disloyal to its employer and as a result was not entitled to receive compensation for placements made during her employment, whether such compensation constituted salary or commissions. The court stated:

It is well settled that [an employee] is prohibited from acting in any manner inconsistent with his agency or trust and is at all times bound to exercise the utmost good faith and loyalty in the performance of his duties. Not only must the employee or agent account to his principal for secret profits but he also forfeits his right to compensation for services rendered by him if he proves disloyal.

*Id.* at 280, 584 N.Y.S.2d .824. (citations and internal quotations omitted). *See also, Interpool Ltd. v. Patterson*, 874 F.Supp. 616 (S.D.N.Y.1995)(adopting holding in *Bon Temps* ).

Based on *Bon Temps* and provided that defendant's decision that plaintiff breached his duty of loyalty was made in good faith, as discussed below, the "for cause" and the forfeiture provisions do not violate New York agency law or public policy.

■ Plaintiff also argues that he was unaware of the forfeiture provisions while at Phibro, rendering them unenforceable as to him. Plaintiff proffers his affidavit which states that none of the documents he received regarding the EPP reference the forfeiture provisions and he became aware of those provisions only when commencing this lawsuit. In his deposition testimony given prior to the date of the affidavit, however, plaintiff states that in 1990 or 1991 he read the summary brochure of the EPP which expressly provides that the stock awards may be forfeited if a participant's employment is, or could have been, terminated for cause. A party may not create a genuine issue of material fact by proffering an affidavit that contradicts previous deposition testimony. *Hayes v. New York City Dept. of Corrections*, 84 F.3d 614, 619 (2d Cir.1996).

B. *Did defendant retroactively terminate and forfeit the stock awards in good faith?*

■ Although the EPP delegates the Compensation Committee with sole discretion in determining whether a participant should be terminated or could have been terminated for cause, neither party disputes that defendant must make such a determination in good faith. *Sarnoff v. American*

*Home Products Corp.,* 666 F.Supp. 137, 138 (1987), *aff'd in part and rev'd on other grounds,* 798 F.2d 1075 (7th Cir.1986). ("Under New York law, the decision of a committee can be set aside only if the plaintiff can establish that the decision was the result of bad faith, fraud, or arbitrary action."). The determination of whether a party acted in good faith is generally left to the factfinder. *American Intern. Group, Inc. v. London Am. Intern. Corp. Ltd.,* 664 F.2d 348, 353 (2d Cir.1981)("Subjective issues such as good faith are singularly inappropriate for determination on summary judgment.").

■ Defendant claims that it made its decision based on the investigation of its General Counsel and Assistant General Counsel, and such factors as the timing of plaintiff and his staff's departure on Friday, and their immediate opening for business at MG the following Monday. While persuasive, plaintiff's affidavit controverts the basis of defendant's findings by stating that he was solicited by Phibro employees for jobs at MG. More particularly, plaintiff states that prior to his resignation, hundreds of employees left the company through both voluntary and involuntary terminations causing low morale among the employees and concern about job security. He claims that he announced his decision to resign to his colleagues out of a sense of responsibility since he hired them and preserved their positions at Phibro. These individuals, plaintiff contends, solicited him about opportunities with MG because some no longer wanted to remain with defendant once plaintiff left and others were concerned about the future of their positions. Also, plaintiff claims that neither he nor any of the Phibro employees that resigned removed any proprietary materials belonging to defendant. The personal lists of contacts and clients, plaintiff asserts, were common knowledge within the industry and published in a trade journal.

Drawing all reasonable inferences in favor of plaintiff, summary judgment is inappropriate as to this issue.

C. *Do the stock awards constitute "wages" under New York Labor Law?*

New York has a "longstanding policy against the forfeiture of earned wages...."

*Weiner v. Diebold Group, Inc.,* 173 A.D.2d 166, 167, 568 N.Y.S.2d 959, 960 (1st Dept. 1991). "Wages" are defined as "the earnings of an employee for labor and services rendered, regardless of whether the amount of earnings is determined on a time, price, commission or other basis." N.Y. Labor Law § 190 (McKinney 1997). An employee is entitled to attorneys' fees and liquidated damages equal to 25% of the total amount of wages found to be due if the employer's failure to pay the wages is willful. N.Y. Labor Law § 198(1–a) (McKinney 1997).

Although the New York Court of Appeals has yet to rule on this issue, the weight of the authority holds that incentive compensation is not "wages" within the meaning of the Labor Law. *See Canet v. Gooch Ware Travelstead,* 917 F.Supp. 969, 995 (E.D.N.Y.1996) and cases cited therein. In addition to the terms of the bonus plan, other factors that courts have taken into consideration in determining whether certain additional compensation constitutes "wages" is whether the employee has a fixed method of compensation and whether the additional compensation is conditioned on considerations outside the employee's actual work. In that event, such compensation does not constitute "wages" but a discretionary bonus subject to forfeiture. *Tischmann v. ITT/Sheraton,* 882 F.Supp. 1358 (S.D.N.Y. 1995); *Samuels v. Thomas Crimmins Contracting Co.,* 1993 WL 36168, * 8 (S.D.N.Y. February 9, 1993).

Based on the terms of the EPP, the stock awards were intended to give the participant a long-term interest in Phibro and defendant. They served as a means to ensure that plaintiff will continue performing in the defendant's best interests. *Bentley v. ASM Communications, Inc.,* 1991 WL 105220, *7 (S.D.N.Y. June 11, 1991). Payment of the awards is not contingent on plaintiff's actual work but on the expiration of the five-year investment period, provided that the forfeiture provisions are not triggered. Although the EPP provides that the awards are "vested" when granted, termination for cause is an exception to vesting. Accordingly, the court finds that the stock awards represent incentive compensation, not "wages" as defined under New York Labor Law.

Plaintiff's claim that the stock awards represent benefits or wage supplements under New York Labor Law § 198–c also lacks merit. Section 198–c imposes criminal penalties on any employer who fails to pay benefits or wage supplements to an employee. This section was amended in 1992 to exclude from its coverage "any person in a bona fide executive, administrative, or professional capacity whose earnings are in excess of six hundred dollars a week." N.Y. Labor Law § 198–c (McKinney 1997); *see Gerzog v. London Fog Corp.,* 907 F.Supp. 590 (E.D.N.Y.)(court dismissed claim under § 198–c for accrued vacation pay where plaintiff earned $52,000 annually). Also, no civil cause of action arises under this section. *Hammell v. Banque Paribas,* 780 F.Supp. 196, 200 (S.D.N.Y.1991). Accordingly, plaintiff's claim under this section is without merit.

II. *Defendant's Counterclaim*

Defendant argues that summary judgment is appropriate as to its counterclaims for damages resulting from plaintiff's breach of his fiduciary duty and duty of loyalty, and unfair competition. As already discussed, the record presents numerous factual disputes as to these issues, including whether plaintiff solicited other employees to join him at MG and whether plaintiff was responsible for taking confidential customer lists or other confidential data from defendant's premises. Such determinations are properly left to the factfinder.

*Conclusion*

For the foregoing reasons, plaintiff's motion for summary judgment [# 56] on both counts of the Amended Complaint is DENIED. Defendant's [# 50] motion for summary judgment is DENIED as to Count One and GRANTED as to Count Two of the Amended Complaint and DENIED as to defendant's Counterclaim.