**Edward E. LUCENTE, Plaintiff,**

**v.**

**INTERNATIONAL BUSINESS MACHINES CORPORATION, Defendant.**

**No. 99 CIV. 3987(CM).**

United States District Court, S.D. New York.

May 2, 2003.

David Quittmeyer, Hand, Arendall, David R. Quittmeyer, Hand Arendall, L.L.C., Douglas L. McCoy, Hand Arendall, L.L.C., George M. Walker, Esq., Hand Arendall, L.L.C., Mobile, AL, for Edward E. Lucente, plaintiff.

Peter T. Barbur, Cravath, Swaine & Moore, L.L.P., New York City, for I.B.M, defendant.

## MEMORANDUM DECISION AND ORDER

MCMAHON, District Judge.

This case is before me on remand after the Second Circuit's decision in *Lucente v. International Business Machines Corp.*, 310 F.3d 243 (2d Cir.2002). Plaintiff now seeks to renew his motion to review Magistrate Judge Yanthis's order denying his request for the production of documents and information regarding how defendant enforced and interpreted noncompetition agreements with its employees. For the following reasons, plaintiff's motion is granted.

## BACKGROUND

This case involves questions regarding the legality of defendant International Business Machines Corporation's ("IBM") cancellation of certain stock options and restricted stock IBM had awarded Lucente during his tenure at the company. The facts of this case are set forth more fully in previous decisions by both the Second Circuit and this Court. *See Lucente*, 310 F.3d at 243; *Lucente v. International Business Machines Corp.*, 117 F.Supp.2d 336 (S.D.N.Y.2000). Familiarity with those decisions is assumed.

In March of 2000, Lucente sought discovery from IBM regarding how it had interpreted and enforced noncompetition agreements that it had entered into with other employees. IBM argued that the information Lucente requested was irrelevant to the lawsuit. Magistrate Judge Yanthis denied Lucente's request, relying on this Court's decision in *International Business Machines Corp. v. Martson*, 37 F.Supp.2d 613 (S.D.N.Y.1999).

Lucente then asked this Court to review Judge Yanthis's decision pursuant to 28 U.S.C. § 636(b)(1)(A), which provides that "[a] judge of the court may reconsider any pretrial matter under this subparagraph (A) where it has been shown that the magistrate's judge's order is clearly erroneous or contrary to law." *Id.* I informed Lucente that "I would prefer to rule on your motion for summary judgment before I resolve this dispute—if you should win without having to see IBM's documents, I would prefer that you not see them." I also told him that if he wished for an immediate ruling, I would oblige his request. Lucente implicitly opted to take

the former course by declining to respond to my April 6 order.

On October 5, 2000, I granted Lucente's motion for summary judgment. IBM appealed from the award of summary judgment, and Lucente cross-appealed from, *inter alia,* my April 6 order. The Court of Appeals reversed my award of summary judgment and remanded the case for further proceedings. The Court's decision did not mention Lucente's appeal from my April 6 order; Lucente's Notice of Appeal appears to be the only mention of that issue.

On March 13, 2003, Lucente moved to "renew" his motion to reconsider Judge Yanthis's order denying his request for discovery. IBM argues that Lucente's appeal of my April 6 order and his failure to brief the issue on appeal and secure a reversal renders Judge Yanthis's order the law of the case, which may not now be disturbed. Alternatively, IBM argues that the information Lucente seeks to discover is irrelevant.

## DISCUSSION

### I. *The Law of the Case Doctrine Does Not Apply*

 The mandate rule, a subsidiary of the law of the case doctrine, " 'describes the duty of the district court on remand' upon receipt of the mandate, which is the appellate court's direction to the trial court." *United States v. Ben Zvi,* 242 F.3d 89, 95 (2d Cir.2001) (quoting *United States v. Tenzer,* 213 F.3d 34, 39 (2d Cir. 2000)). The rule "compels compliance on remand with the dictates of the superior court and forecloses relitigation of issues expressly or *impliedly* decided by the appellate court." *Id.* (quoting *United States v. Bell,* 5 F.3d 64, 66 (4th Cir.1993)). In addition, "where an issue was ripe for review at the time of an initial appeal but was nonetheless foregone, the mandate rule generally prohibits the district court

from reopening the issue on remand unless the mandate can reasonably be understood as permitting it to do so." *Id.* (citing *United States v. Stanley,* 54 F.3d 103, 107 (2d Cir.1995)).

 Judge Yanthis's order was not ripe for review when Lucent filed his Notice of Appeal. Where a Magistrate Judge determines a pretrial matter pursuant to 28 U.S.C. § 636(b)(1)(A), his ruling does not become final (and thus appealable pursuant to 28 U.S.C. § 1291) until the District Court reviews the Magistrate Judge's decision. *LoSacco v. City of Middletown,* 71 F.3d 88, 91 (2d Cir.1995). My April 6 order was clearly not a review of Judge Yanthis's decision. Thus, Lucente's appeal from Judge Yanthis's order—if that indeed was what he was attempting to appeal from (his Notice of Appeal is not entirely clear)—was premature. He therefore did not have an opportunity to challenge the decision on appeal and Judge Yanthis's ruling is not the law of the case.

### II. *The Information Plaintiff Seeks to Discover is Relevant*

#### A. *The Information Lucente Seeks is Relevant to Whether IBM Acted Fraudulently, Arbitrarily, or in Bad Faith*

Lucente and IBM agree that two primary issues lay at the heart of this case: (1) whether Lucente left IBM voluntarily or involuntarily (i.e., he was fired); and (2) whether, assuming he was fired, the forfeiture provisions were reasonable. They dispute the relevance of a third issue—that is, whether IBM acted arbitrarily when it determined that the company that Lucente went to work for (Digital Equipment Corporation) was a competitor and thus decided to divest him of his stock options and restricted stock. A brief review of the legal framework that applies in this case will clarify the parties' disagreement.

As the Court of Appeals explained, New York courts disfavor restrictive covenants in the employment context and will generally enforce them only to the extent that they are reasonable. *Lucente*, 310 F.3d at 254. There is an exception to this rule, however, known as the "employee choice" doctrine: "New York courts will enforce a restrictive covenant without regard to its reasonableness if the employee has been afforded the choice between not competing (and thereby preserving his benefits) or competing (and thereby risking forfeiture)." *Id.* In sum, a restrictive covenant is enforceable without regard to reasonableness if an employee left his employer voluntarily, but a court must determine whether such a covenant is "reasonable" if the employee left involuntarily and without cause.

IBM disagrees with plaintiff as to what "reasonableness" standard would apply were a jury to find that Lucente left IBM involuntarily and without cause. In his proposed jury instructions, Lucente relies largely on *Reed, Roberts Assocs., Inc. v. Strauman*, 40 N.Y.2d 303, 386 N.Y.S.2d 677, 353 N.E.2d 590 (1976), a leading New York case regarding employment agreements not to compete.

Under *Reed, Roberts* and its progeny (and antecedents), a noncompetition agreement is reasonable if it (1) is not greater than required for the protection of the legitimate interests of the employer; (2) does not impose undue hardship on the employee; and (3) is not injurious to the public. *See BDO Seidman*, 93 N.Y.2d at 388–89, 690 N.Y.S.2d at 857, 712 N.E.2d 1220. "A violation of any prong renders the covenant invalid." *Id.*

To apply the first prong, a court must first determine whether the employer has any legitimate interests to protect. Generally speaking, it is legitimate for an employer to protect itself from "unfair or illegal conduct that causes economic inju-

ry." *American Broadcasting Companies, Inc. v. Wolf,* 52 N.Y.2d 394, 404, 438 N.Y.S.2d 482, 487, 420 N.E.2d 363 (1981). Thus, noncompetition agreements may be enforced "to the extent necessary (1) to prevent an employee's solicitation or disclosure of trade secrets, (2) to prevent an employee's release of confidential information, or (3) in those cases where the employee's services to the employer are deemed special or unique." *Ticor Title Ins. Co. v. Cohen,* 173 F.3d 63, 70 (2d Cir.1999). Against these legitimate interests, a court must then weigh the extent to which the noncompetition agreement is unreasonable in "time, space or scope." *American Broadcasting Companies, Inc.,* 52 N.Y.2d at 403–04, 438 N.Y.S.2d at 486, 420 N.E.2d 363. In other words, "[s]uch covenants will be enforced only if reasonably limited temporally and geographically, and then only to the extent necessary to protect" the employer's legitimate interests. *Columbia Ribbon & Carbon Mfg. Co. v. A–1–A Corp.,* 42 N.Y.2d 496, 499, 398 N.Y.S.2d 1004, 1006, 369 N.E.2d 4 (1977) (internal citations omitted).

In *Reed, Roberts,* as well as the other cases that Lucente cites in his proposed jury instructions, an employer sought to enjoin its former employee from working for a competitor. Thus, IBM proffers the argument that forfeiture for competition clauses should be evaluated under a different reasonableness standard than noncompetition clauses that an employer seeks to enforce by enjoining an employee from working for a competitor. But the applicable case law does not support this proposition.

First, the New York Court of Appeals' decision in *BDO Seidman v. Hirshberg,* 93 N.Y.2d 382, 690 N.Y.S.2d 854, 712 N.E.2d 1220 (1999) contradicts IBM's argument. That case involved an agreement requiring defendant, a former employee of BDO, to

compensate BDO for serving any client of BDO's Buffalo office within eighteen months after the termination of his employment. The court explained:

> Concededly, the [agreement] does not prevent [defendant] from competing for new clients, nor does it expressly bar him from serving BDO clients. Instead, it requires him to pay "for the loss and damages" sustained by BDO in losing any of its clients to defendant within 18 months after his departure, an amount equivalent to 1½ times the last annual billing for any such client who became the client of defendant. Nonetheless, it is not seriously disputed that the agreement, in its purpose and effect, is a form of ancillary employee anti-competitive agreement that will be carefully scrutinized by the courts.

*Id.* at 388, 690 N.Y.S.2d 854, 712 N.E.2d 1220. Thus, the Court of Appeals does not distinguish between enjoining an employee from competing with his former employer and imposing some sort of financial penalty for doing so—whether it be a payment of one and a half times the amount the company lost due to such competition or a forfeiture of stock options the employee had been awarded during his employment. *See also Wise v. Transco, Inc.,* 73 A.D.2d 1039, 1039, 425 N.Y.S.2d 434, 435 (4th Dep't 1980).

Second, the two federal cases IBM relies on—*York v. Actmedia, Inc.,* No. 88 Civ. 8763, 1990 WL 41760 (S.D.N.Y. Mar. 30, 1990) and *Bradford v. New York Times Co.,* 501 F.2d 51, 58 (2d Cir.1974)—do not apply a different reasonableness standard. Indeed, Judge Griesa specifically quotes *Reed, Roberts* in *Actmedia,* 1990 WL 41760, at *2. Rather, what the *Bradford* and *Actmedia* courts did was take into account the absence of an injunction as one factor within that very same standard. Specifically, they appear to take it into account in determining whether the restriction is "greater than is needed" to protect the employer's legitimate interests. Whether or not the *York* and *Bradford* courts erred in weighing the absence of an injunction within the well-established New York reasonableness standard, I express no opinion at this stage of the proceedings. *See Sarnoff v. American Home Products Corp.,* 798 F.2d 1075 (7th Cir.1986) (discussing possible rationales for distinguishing between enjoining a former employee from competing and merely forfeiting a monetary benefit, and noting that the prospect of having to forfeit a sizable portion of money in order to compete with a former employer might have an indistinguishable effect from an injunction). What is clear, however, is the contours of the reasonableness standard, as set forth above, are the same in both injunction and forfeiture cases.

■ Thus, if (1) Lucente left IBM involuntarily and without cause, and (2) the forfeiture provision was unreasonable (pursuant to the principles enunciated above), then IBM cannot enforce the forfeiture provision. Alternatively, if Lucente left IBM voluntarily or if he left involuntarily and the forfeiture provision is reasonable, another issue remains—whether IBM acted fraudulently, arbitrarily, or in bad faith when it determined that Digital was a competitor and that it would divest Lucente of his stock options and restricted stock.

■ Under New York law, if an employee is a part of a "plan" that gives a "committee" sole discretion to interpret the plan and determine whether the employee is entitled to benefits under the plan, a court can review such determinations to see whether they were made fraudulently, in bad faith, or arbitrarily. *See Gitelson v. Du Pont,* 17 N.Y.2d 46, 268 N.Y.S.2d 11, 215 N.E.2d 336 (1966); *Gehrhardt v. General Motors Corp.,* 581 F.2d 7 (2d Cir. 1978); *Wyper v. Providence Washington*

*Ins. Co.,* 533 F.2d 57 (2d Cir.1976); *Bradford v. New York Times,* 501 F.2d 51, 61 (2d Cir.1974); *Rosenberg v. Salomon, Inc.,* 992 F.Supp. 513, (D.Conn.1997) (applying New York law); *Sarnoff v. American Home Products Corp.,* 798 F.2d 1075 (7th Cir.1986) (applying New York law); *Cinelli v. American Home Products Corp.,* 785 F.2d 264, 267 (10th Cir.1986) (applying New York law).

IBM argues that the above cases are inapposite because they only involve instances where a committee's determinations are "binding and conclusive for all purposes," thereby depriving the employee the opportunity to challenge the determination on the merits. But although the operative plans in this case do not contain "binding and conclusive" language, they state that "[t]he [Committee on Executive Compensation] shall have full and exclusive power to interpret the Plan ...." [Edwards Declaration, Ex. 1, at 2; Ex. 2, at 4]. Indeed, IBM appears to recognize the implications of these provisions. In its proposed jury instructions, IBM proposes the following language:

> Under the terms of the [agreement] as I just read them to you, Lucente complied with the [agreement] only if, following his employment with IBM, he worked for a company that did not, in IBM's reasonable judgment, compete with IBM. Thus, you must determine whether IBM had a reasonable basis for its conclusion that Digital competed with IBM. The issue is not whether you believe that Digital competed with IBM but only whether IBM had a reasonable basis for concluding that it did.

[IBM's Proposed Jury Instructions 6]. Thus, IBM argues (in this motion) that its determination that Digital was a competitor is subject to direct challenge while arguing (in its proposed jury instructions) that it is not. In other words, IBM wants to have its cake (the favorable jury instruc-tion) and eat it too (by preventing Lucente from discovering relevant information). Of course, it cannot.

The information Lucente seeks is relevant to whether IBM acted arbitrarily, in bad faith, or fraudulently in determining that Digital was a competitor and thereby divesting Lucente of his stock options and restricted stock. Let's assume, for example, that the information Lucente seeks demonstrates the following: (1) ten executives left IBM at approximately the same time; (2) while at IBM, those executives had experiences and responsibilities similar to Lucente; (3) six months after they left IBM, those executives went to work for companies substantially similar to the company Lucente eventually went to work for (Digital Equipment Corporation); and (4) IBM chose not to divest them of their stock options. That evidence would support an inference that IBM acted arbitrarily or in bad faith in deeming Digital to be a competitor.

**B.** *Judge Yanthis's Decision is Clearly Erroneous*

As noted above, I review Judge Yanthis's order under the "clearly erroneous or contrary to law" standard. 28 U.S.C. § 636(b)(1)(A); *see also Thomas E. Hoar, Inc. v. Sara Lee Corp.,* 900 F.2d 522, 525 (2d Cir.1990). Moreover, magistrate judges are " 'afforded broad discretion' in resolving discovery disputes, and their resolution of such issues will be overturned only if that discretion is abused." *Inside Radio, Inc. v. Clear Channel Communications, Inc.,* 208 F.R.D. 537, 539 (S.D.N.Y. 2002).

Relying largely on this Court's decision in *Martson,* 37 F.Supp.2d 613, Judge Yanthis concluded that the information Lucente seeks to discover is irrelevant. In that case, IBM alleged that defendant Martson had violated his stock options agreements by exercising stock options

**116**

within six weeks of working for a competitor and by subsequently failing to pay to IBM the profits that he realized from the exercise. As an affirmative defense, Martson asserted that IBM had breached its implied covenant of good faith and fair dealing by administering an employment plan—of which he was a part and that contained the forfeiture for competition clause at issue—in an arbitrary, inconsistent, and unreasonable manner. *Id.* at 619. I found that whether or not IBM had administered the plan in an arbitrary, inconsistent, or unreasonable manner was irrelevant as to whether IBM had breached the implied covenant of good faith and fair dealing.

Martson did not raise the issue that is germane here: whether IBM's treatment of former employees who were similarly situated might provide evidence that IBM acted arbitrarily, in bad faith, or fraudulently when it determined, pursuant to the plans, that it would divest Lucente of his stock options and restricted stock because Digital was a competitor. And insofar as Judge Yanthis based his ruling on *Martson,* he clearly erred.

### CONCLUSION

For the reasons discussed above, plaintiff's motion to require defendant to provide information and documents regarding IBM's interpretation and enforcement of noncompetition agreements is granted.

This is the decision and order of the Court.