RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 26a0134p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

───────────────

AMANDA MARTIN,

               *Plaintiff-Appellant*,

    *v.*

FEDERAL RESERVE BANK OF CLEVELAND; MATRIX
ABSENCE MANAGEMENT, INC.; LONG TERM DISABILITY
INCOME PLAN FOR EMPLOYEES OF THE FEDERAL
RESERVE SYSTEM,

               *Defendants-Appellees*.

No. 25-3518

───────────────

Appeal from the United States District Court for the Northern District of Ohio at Cleveland.
No. 1:23-cv-01564—Christopher A. Boyko, District Judge.

Decided and Filed:  May 7, 2026

Before:  GIBBONS, THAPAR, and LARSEN, Circuit Judges.

───────────────

## COUNSEL

───────────────

**ON BRIEF:**  Andrew S. November, LINER LEGAL LLC, Cleveland, Ohio, Eric S. McDaniel, Matthew J. Kasper, MALYUK MCDANIEL KASPER LLC, Cuyahoga Falls, Ohio, for Appellant.  Dustin M. Dow, Lauren T. Stuy, BAKER & HOSTETLER LLP, Cleveland, Ohio, for Appellees.

───────────────

## OPINION

───────────────

JULIA SMITH GIBBONS, Circuit Judge.  Amanda Martin filed this lawsuit after unsuccessfully appealing the denial of long-term disability benefits pursuant to the Federal Reserve Bank of Cleveland's disability income plan.  The Federal Reserve Bank of Cleveland

(the Bank) named Matrix Absence Management, Inc. (Matrix), as administrator of the Bank's Long Term Disability Income Plan for Employees of the Federal Reserve System (the Plan). Martin, who experienced symptoms associated with long-haul COVID-19, filed a claim for benefits under the Plan.  Matrix denied her claim and Martin appealed that denial.  Following its review on appeal, Matrix issued Martin a final denial.  Martin then sued the Bank, Matrix, and the Plan in federal district court.

Because the Employee Retirement Income Security Act (ERISA) does not cover governmental plans administered by agencies of the United States, Martin brought breach of contract and breach of fiduciary duty claims against the defendants.  *See* 29 U.S.C. § 1003(b)(1). In the course of this litigation, Martin moved for the district court to permit discovery outside of the administrative record, but the court denied her motion.  Martin subsequently moved for the district court to permit *limited* discovery outside of the administrative record, but the court denied most of her requests.

The defendants and Martin moved for judgment on the administrative record.  The district court granted judgment on the administrative record for the defendants and denied Martin's motion.  Martin appealed from the district court's judgment and the court's two orders denying her discovery.  We affirm the district court because it properly applied the relevant legal standards, denied Martin's requests for discovery, and determined that Matrix did not arbitrarily deny Martin long-term disability (LTD) benefits pursuant to the Plan.

**I.**

Martin began working for the Bank on August 31, 2018.  She worked as a Project Director at the Bank until April 12, 2022, and she took leave from her role on April 13, 2022. Martin sought leave because she was a "COVID-19 long[-]hauler" experiencing malaise, fatigue, and migraines.  DE 26, Admin. R. (AR), Page ID 2074, 3124.  And, having enrolled in the Plan, Martin later filed a claim for LTD benefits with Matrix, the Bank's designated administrator for the Plan.

**A.**

The Plan was established in part "to provide [LTD] benefits for eligible Employees of the Federal Reserve System who are unable to work due to a mental or physical disease or bodily injury." DE 13-1, Plan, Page ID 1645. Under the Plan's terms, LTD benefits are payable "provided the Participant has provided the Medical Board with the Proof necessary to support the Participant's claim." *Id.* at 1657. To be eligible for benefits, the Participant must submit "Proof" of "Total Disability" as defined in the Plan. *Id.* at 1660. "Proof" includes written documentation that "evidences and supports a claim for LTD Benefits" and "form[s] of objective medical evidence[.]" *Id.* at 1654. "Total Disability" means that the Participant is "*unable solely because of illness or injury to work on a regular and full time basis* . . . at his own job or Another Job in his Own Occupation" during the "Own Occupation Period" and "*unable, solely because of illness or injury*[,] *to work* at Any Occupation" during the "Any Occupation Period." *Id.* at 1655 (emphases added).

The "Own Occupation Period" refers to the "first eighteen [] months of any Period of Total Disability, beginning on the first day of the Elimination Period." *Id.* at 1652. Relevant to the definition of the "Own Occupation Period," the "Elimination Period" is "a period of [180] days during which the Participant is Totally Disabled," and the first day of the Elimination Period is the date "designated by the Medical Board as the first day the Participant was Totally Disabled, which is also the first day of a Participant's Period of Total Disability." *Id.* at 1647. Meanwhile, the "Any Occupation Period" refers to "the period beginning after the end of the Own Occupation Period and ending on the last day the LTD Payee is eligible for LTD Benefits." *Id.* at 1646.

The Bank itself does not make payout determinations under the Plan's terms. The Committee on Plan Administration, also known as the Plan Administrator, may delegate to "any committee, subcommittee, officer, employee or agent its authority to perform any act pertaining to the Plan or the administration thereof including, without limitation, those matters involving the exercise of discretion." *Id.* at 1653, 1665. The Plan Administrator's delegate in this case is Matrix, which adjudicated Martin's claim. Tasked with making benefits determinations under the Plan, the delegate "will have the broadest discretion permissible under applicable laws and its

decision will be final and binding upon all persons affected thereby." *Id.* at 1667; *see also id.* at 1664 ("[T]he Plan Administrator or its delegate shall have full responsibility for the administration and interpretation of the Plan and shall have such authority as is necessary or appropriate in carrying out its responsibilities.").

At its core, the Plan's delegation entails that benefits may be paid "only if the Medical Board, Executive Director, or the Committee on Plan Administration [the Plan Administrator], as applicable, decides in its discretion that the claimant is entitled to them under the terms of the Plan." *Id.* at 1667. We also note that the Plan provides that it "shall be construed, regulated, and administered under the laws of the United States or the State of New York, as applicable, without regard to New York's principles regarding conflicts of law." *Id.* at 1679. It also requires that claimants exhaust relevant procedures under the Plan before bringing suit regarding a denial of benefits. And it allows the Medical Board, "in its sole discretion," to have a "Physician of its choice examine any Participant and any LTD Payee" who has applied for benefits. *Id.* at 1661.

Although Martin took leave on April 13, 2022, she provided notification of her intent to file a claim for LTD benefits in May 2022 and submitted her application in September 2022. Upon receiving Martin's claim, Matrix was required to review the files that Martin had provided and to render a determination regarding her eligibility for LTD benefits under the Plan. The administrative record in this case contains extensive medical evidence that Martin provided Matrix for its LTD benefits determination. The evidence most relevant to Matrix's determination originated in the few months before and after April 13, 2022. *See* DE 26, AR, Page ID 2046–48, 2058 (the "question" that Matrix had to answer was "if [Martin] was so impaired as of the date [she] stopped working for The Federal Reserve System on a full-time, consistent basis, as to potentially warrant LTD benefits. This happens to be April 13, 2022[.]").

Martin believes that she first contracted COVID-19 in March 2020 and she experienced persistent symptoms. She experienced dizziness, brain fog, and difficulty breathing. In late December 2021, Martin tested positive for COVID-19, likely marking her second COVID-19 infection. One psychologist noted that Martin's life has been "dramatically altered from the illness and she is working very hard to identify ways to manage her illness and . . . resume meaningful work." *Id.* at 2888.

According to Martin's serious health condition form for requesting leave pursuant to the Family and Medical Leave Act (FMLA), Martin's "condition" began on January 1, 2022, during or shortly following this second COVID-19 infection. *Id.* at 2072–74. Specifically, Martin began experiencing difficult symptoms of long-haul COVID-19. She told a doctor that "many things [felt] wrong with her body," and that she could not find "real answers or solutions[.]" *Id.* at 2093. Martin has spoken with many medical professionals about her symptoms, including migraines and sensitivity to light.

Despite these symptoms, Martin worked at the Bank between her COVID-19 diagnosis in December 2021 and her decision to take leave on April 13, 2022. In this interval and shortly thereafter, Martin exhibited signs of improvement. On April 12, 2022, Martin's last day of work, one medical exam revealed that she had "100% immediate verbal memory, long-term memory[,] and working memory." *Id.* at 1951. One medical note dated April 22 indicated that Martin's Botox injections were "decreasing" the "intensity of [her] severe migraines," and another note showed that she had received several rounds of Botox treatment by mid-April 2022. *Id.* at 1947, 2015. As Martin's later appointments reflect, though, she continued to experience pain, fatigue, brain fog, dizziness, and headaches.

Matrix's independent medical reviewer, Dr. Moufawad, examined Martin in December 2022. Moufawad concluded that Martin's records in April 2022 reflected improvement. Indeed, he stated that her symptoms were stable to improving "around the period that she requested [] leave from work[,] which is 4/13/2022." *Id.* at 3124. He noted that the information he reviewed and the physical examination he conducted did not reveal that Martin was "physically restricted and limited in functioning to [be] exclude[d] . . . from working starting 04/13/2022 through present." *Id.* And he stated that it was "not clear from the medical records reviewed what changed" in Martin's condition as of April 13 to "preclude her from working." *Id.* at 3125.

In response to Moufawad's report, Martin sought out rebuttal treating opinions from two of her physicians, Dr. Riffle and Dr. Dornan, who provided the requested opinions on March 17 and 23, 2023, respectively. Riffle disagreed with Moufawad's conclusion because Riffle believed that Martin's conditions of "migraine headaches and [COVID-19] long haul symptoms [did] prevent Ms. Martin from maintaining remunerable employment." *Id.* at 3326. Dornan

detailed Martin's "significant discomfort" and claimed that Moufawad had never treated Martin or consulted with her medical providers. *Id.* at 3328.

Matrix issued Martin an initial denial on February 1, 2023. In its letter, Matrix stated that, as of April 13, 2022, Martin did not satisfy the "Plan's Own Occupation definition of Total Disability," so LTD benefits were not payable. *Id.* at 2046, 2048. Matrix explained in detail that it had reviewed medical information from at least twelve of Martin's treating physicians. It noted Dornan's examination of Martin on April 15, 2022, which was unremarkable, and cited another physician's medical notes from April 22, which reflected that Martin's "headache intensity" was showing signs of improvement because of her Botox treatment. *Id.* at 2048. In short, Matrix found no "worsening reported symptoms or a change in symptoms" or other medical deterioration that would have precluded Martin from working as of April 13. *Id.* Instead, Matrix identified an improvement in symptoms. And in response to Dornan's assertion that Martin could not perform any work function given her diagnoses of long-haul COVID-19, malaise, fatigue, and migraine, Matrix credited Moufawad's contrary conclusion based on Martin's medical information and her demonstrated ability to work with long-haul COVID-19. In sum, Martin was not physically restricted or limited in functioning such that she could not work. Matrix's letter allowed Martin to appeal this decision, which Martin did.

Matrix affirmed its denial in a second letter dated May 25, 2023. It reiterated in this letter that Martin's exam on April 15 was "unremarkable," her exam on April 22 showed her to be "stable to improving with the Botox injection," and it was "not clear from the medical records" what had changed as of April 13, 2022, to preclude Martin from working. *Id.* at 2056–57. The letter clearly discussed Dornan's treatment notes and other notes from Martin's treating physicians, and it explained that Moufawad's opinion was more persuasive because Martin had worked between her December 2021 infection and leave date, and because she had exhibited an improvement in symptoms.

In this letter, Matrix also stated that, despite its initial conclusion, it commissioned three independent physicians, Drs. Erdos, Glass, and Sonne, to review Martin's medical evidence in early May 2023. None of them found that Martin had a physical restriction impeding her from working in her role. Glass noted that Martin showed signs of improvement on April 14, Sonne

found that Martin's prognosis was "excellent" and she "certainly could have worked from April 13, 2022, forward," and Erdos identified no impairment in Martin's psychiatric functional ability as of April 13. *Id.* at 3566, 3599, 3609. Matrix thus determined that, based on the available medical evidence, Martin was not "Totally Disabled" as of April 13, 2022. *Id.* at 2058 ("Your client's working through and until April 13, 2022, demonstrated . . . that they were fully capable of [working on a full-time, consistent basis], and not *Totally Disabled* by definition." (emphasis in original)).

**B.**

On August 11, 2023, Martin filed her complaint, asserting breach of contract and breach of fiduciary duty claims against the Bank, Matrix, and the Plan. Martin alleged that the Plan provided a contract that the defendants breached by knowingly and wrongfully refusing to pay her LTD benefits. And she alleged that the defendants owed her a duty of good faith and fair dealing as she was a beneficiary of the Plan, and that they violated this duty by, among other things, cherry-picking medical evidence to deny her benefits. Martin requested reinstatement, "any arrearage owed," "ongoing" and "future" LTD benefits, litigation costs, and the ability to "conduct discovery." DE 1, Compl., Page ID 5–6. The defendants answered Martin's complaint, denying many of Martin's allegations and asserting several defenses.

Following the pleadings, the parties met to plan for discovery pursuant to Federal Rule of Civil Procedure 26(f). Martin requested that the district court allow open discovery pursuant to Rule 26, but the district court denied her motion. The court justified its denial by reasoning under our circuit's application of New York law that judicial review of Martin's claim should be limited to the administrative record.

Martin subsequently moved for "limited discovery," asserting that the defendants' bias and conflict of interest justified an exception to the rule that the court must look only to the administrative record. DE 21, Pl.'s Mot. Limited Disc., Page ID 1817. The district court largely denied Martin's motion, reasoning that limited discovery was not warranted because Martin failed to properly allege a conflict of interest or bias. The court nevertheless ordered the defendants to include in the administrative record "all the documents required under the Plan,"

including the "full medical reviews and applicable by-laws" if not already included, or a declaration that the record was already complete. DE 24, Order, Page ID 1920. To comply with this order, the defendants filed under seal an updated administrative record, which included an electronic Claim Activity Report logging activity on Martin's claim.

After the court's second order regarding discovery, Martin and the defendants filed cross-motions for judgment on the administrative record. On July 9, 2025, the district court granted judgment on the administrative record in favor of the defendants and denied Martin's motion, primarily because Martin failed to establish that Matrix breached the Plan's terms by arbitrarily denying her LTD benefits. Two days later, Martin appealed from the district court's entry of judgment for the defendants and from the court's two orders denying Martin's requests for discovery.

## II.

We review de novo the district court's determination of legal questions. *See Frazier v. Life Ins. Co. of N. Am.*, 725 F.3d 560, 565–66 (6th Cir. 2013). Such questions include the standard of review to analyze Matrix's decision, as well as the district court's legal holding that Matrix did not act arbitrarily. *See id.*; *O'Kelly v. Fed. Rsrv. Bank of Cleveland*, No. 22-3774, 2023 WL 4045223, at *4 (6th Cir. June 16, 2023). We review for clear error the district court's factual findings. *O'Kelly*, 2023 WL 4045223, at *4. A district court's factual findings are clearly erroneous if, "based on the entire record, we are left with the definite and firm conviction that a mistake has been committed." *Shelby Cnty. Health Care Corp. v. Majestic Star Casino*, 581 F.3d 355, 364–65 (6th Cir. 2009) (citation modified).

The scope of discovery is "a matter committed to the district court's sound discretion," so we may reverse the court's rulings on discovery-related matters only if it has abused that discretion. *Theunissen v. Matthews*, 935 F.2d 1454, 1465 (6th Cir. 1991); *see Fisher v. City of Memphis*, 234 F.3d 312, 316 (6th Cir. 2000). We also review for abuse of discretion the district court's rulings on limited discovery in cases regarding a plan administrator's potential conflict of interest. *See Johnson v. Conn. Gen. Life Ins. Co.*, 324 F. App'x 459, 466 (6th Cir. 2009). We may find an abuse of discretion only if we have a "definite and firm conviction that the trial court

committed a clear error of judgment." *Fisher*, 234 F.3d at 316 (quoting *Cincinnati Ins. Co. v. Byers*, 151 F.3d 574, 578–79 (6th Cir. 1998)). The district court abuses its discretion when it "relies upon clearly erroneous findings of fact or when it improperly applies the law or uses an erroneous legal standard." *Id.* (quoting *United States v. Hart*, 70 F.3d 854, 859 (6th Cir. 1995)).

**III.**

Martin raises eight issues on appeal. First, she claims that the district court applied the incorrect standard to analyze Martin's breach of contract and breach of fiduciary duty claims. Second and third, Martin asserts that the court improperly denied her open discovery and limited discovery, respectively. Martin's remaining five assignments of error assert that the court erred in granting the defendants judgment on the administrative record because Matrix's denial disregarded critical medical evidence and was thus "arbitrary, capricious, or made in bad faith[.]" CA6 R. 16, Appellant Br., at 13, 39–59. We consider each argument in turn.

**A.**

First, Martin disputes the standard of review that the district court applied to Matrix's denial of her LTD benefits. Specifically, she claims that the court improperly relied on one of our unpublished decisions, *O'Kelly v. Federal Reserve Bank of Cleveland*, to apply a "deferential standard of review" to Matrix's denial of LTD benefits. CA6 R. 16, Appellant Br., at 27–30; *see O'Kelly*, 2023 WL 4045223, at *3.

At the outset, we clarify that this appeal requires us to identify several standards of review, including the standard that the district court should have applied to review Matrix's decision and the standard that we must apply to review the district court's decision. *See O'Kelly*, 2023 WL 4045223, at *3. Martin takes issue with the former standard.

The district court properly applied the arbitrary-and-capricious standard of review to sustain Matrix's decision and grant the defendants judgment on the administrative record. We agree that because ERISA does not govern the Bank's Plan, which has a New York choice-of-law provision, the district court was required to apply New York contract law to determine whether Matrix's denial constituted a breach of the Plan. *See id.* And the court accurately stated

that New York contract law requires arbitrary-and-capricious review to analyze a denial under a plan that vests sole decision-making authority in an administrator.  On these bases, the court properly reasoned that it could set aside Matrix's decision under the applicable law only if that decision was "made in bad faith, was arbitrary or was the result of fraud."  DE 40, Op. & Order, Page ID 3826 (quoting *O'Kelly*, 2023 WL 4045223, at *3).

First, the standard of review applicable to Matrix's determination hinges on whether ERISA applies to the Bank's Plan.  *See O'Kelly*, 2023 WL 4045223, at *3.  ERISA does not apply to any employee benefit plan that is a "governmental plan[.]"  29 U.S.C. § 1003(b)(1).  And ERISA defines the term "governmental plan" to include plans established by an "agency or instrumentality" of the U.S. government.  *Id.* § 1002(32).  Thus, ERISA does not govern the Bank's Plan because the Bank is a federal instrumentality.  *O'Kelly*, 2023 WL 4045223, at *3.

The Supreme Court has stated that claims "challenging an employer's denial of benefits before the enactment of ERISA were governed by principles of contract law."  *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 112 (1989).  ERISA is inapplicable here, so contract law guides the analysis of whether Matrix's denial violated the Plan's terms.  *O'Kelly*, 2023 WL 4045223, at *3; *see Firestone Tire & Rubber Co.*, 489 U.S. at 112.  The Plan in this case, which is the same Plan that was at issue in *O'Kelly*, includes a choice-of-law provision stating that New York law governs the interpretation of the Plan's provisions, so we apply New York contract law to evaluate Matrix's denial.  *See O'Kelly*, 2023 WL 4045223, at *3.

New York contract law requires courts to "enforce written agreements that are 'complete, clear[,] and unambiguous on [their] face' according to the plain meaning of their terms."  *Id.* (quoting *Greenfield v. Philles Recs., Inc.*, 780 N.E.2d 166, 170 (N.Y. 2002)); *see W.W.W. Assocs., Inc. v. Giancontieri*, 566 N.E.2d 639, 642 (N.Y. 1990).  "When a plan vests sole authority in the designated decision[-]maker, an employer's decision to deny 'non-ERISA benefits may be set aside only where it is made in bad faith, was arbitrary or was the result of fraud.'"  *O'Kelly*, 2023 WL 4045223, at *3 (quoting *Welland v. Citigroup, Inc.*, No. 00 CIV. 738 (NRB), 2003 WL 22973574, at *11 (S.D.N.Y. Dec. 17, 2003), *aff'd*, 116 F. App'x 321 (2d Cir. 2004)).  Under this standard, we may not substitute our judgment for the designated decision-

maker's judgment so long as a "reasonable basis" supports the decision. *Gehrhardt v. Gen. Motors Corp.*, 581 F.2d 7, 11 (2d Cir. 1978).

Because the Plan "delegated authority to Matrix to make all disability determinations in its sole discretion," the arbitrary-and-capricious standard governs judicial review of whether Matrix breached the Plan's terms by denying Martin LTD benefits. *See O'Kelly*, 2023 WL 4045223, at *3; DE 13-1, Plan, Page ID 1667; *see also Welland*, 116 F. App'x at 322 (upholding district court's application of the arbitrary-and-capricious standard to review a decision to forfeit the plaintiff's stock options, "especially in light of the full authority given to the Compensation Committee under the terms of the governing agreements and incentive plans"). Moreover, our review of Matrix's denial does not change merely because Martin also pled breach of fiduciary duty claims against the defendants. Indeed, "characterizing a denial of benefits as a breach of fiduciary duty does not necessarily change the standard a court would apply when viewing the administrator's decision to deny benefits." *Varity Corp. v. Howe*, 516 U.S. 489, 514 (1996). We follow the Supreme Court's instruction that the denial of benefits in non-ERISA contexts requires the application of state *contract* law to determine the standard governing review of a decision.[1] *Firestone Tire & Rubber Co.*, 489 U.S. at 112. Based on this instruction and the Plan's terms, we apply New York contract law and may set aside Matrix's decision only if it was made in bad faith, it was arbitrary, or it was the result of fraud. *Welland*, 2003 WL 22973574, at *11.

We reject Martin's claims that there is "no law that permits [the defendants] to have a heightened standard of review" and that the district court improperly gave the defendants "the benefit of ERISA law[.]" *See* CA6 R. 16, Appellant Br., at 27–28. For the reasons we have discussed, New York contract law rather than ERISA supplies the proper standard of review in this case and the district court properly recognized as much. *See O'Kelly*, 2023 WL 4045223, at *3; *Welland*, 2003 WL 22973574, at *11. Martin invites us to apply the "standard" in *Fabi v. Prudential Ins. Co. of Am.*, 2022 WL 5429520 (E.D.N.Y. Aug. 29, 2022), *report and*

---

[1]This inquiry would not meaningfully change if we considered relevant principles of trust law, which would also require a "*deferential standard* of review" because the Plan grants "the administrator or fiduciary *discretionary authority* to determine eligibility for benefits." *See Metro. Life Ins. Co. v. Glenn*, 554 U.S. 105, 111 (2008) (citation modified) (emphases in original).

*recommendation adopted in part*, No. 21-CV-04944-MKB-JRC, 2022 WL 4483400 (E.D.N.Y. Sept. 27, 2022). But there, the district court did not discuss the arbitrary-and-capricious standard because the relevant plan did not vest sole authority in a designated decision-maker; instead, that plan identified conditions precedent for the payout of a "death benefit[.]" *See id.* at *5; *cf. O'Kelly*, 2023 WL 4045223, at *3; *Welland*, 2003 WL 22973574, at *11. The district court therefore applied the correct standard to evaluate Matrix's decision.

**B.**

Martin claims that the district court improperly denied her open discovery, as well as limited discovery to assess the administrative record's "procedural irregularity and [] completeness[.]" CA6 R. 16, Appellant Br., at 13, 30–39. Martin thus assigns error to the district court's first order, denying her open discovery under Rule 26, and to its second order, denying most of her requests for limited discovery. Because the district court's role was to evaluate the reasonableness of Matrix's decision, which was based on the administrative record, the court was in fact limited to that record. Therefore, we affirm both of the district court's orders denying Martin's requests for discovery.

**1.**

With respect to the court's first order, Martin claims that although she pled breach of contract and breach of fiduciary duty claims, the court erroneously denied her the "right to seek open discovery" pursuant to Rule 26, and improperly "injected" ERISA standards into a "non-ERISA matter." *Id.* at 32. She asserts that the court erred because New York law does not prohibit discovery in suits for breach of contract or breach of fiduciary duty. Martin is incorrect that she was entitled to discovery. New York contract law prohibited the district court from substituting its judgment for Matrix's and required the court to determine whether a reasonable basis supported Matrix's decision, which was based on the administrative record. *See Taylor v. Long Term Disability Income Plan for Emps. of Fed. Rsrv. Sys.*, No. 25 CIV. 01134 (LLS), 2025 WL 3640397, at *3 (S.D.N.Y. Dec. 16, 2025); *Welland*, 2003 WL 22973574, at *11.

The district court first appropriately recognized that, because ERISA does not apply to the Bank's Plan, the court was required to identify the relevant principles of state contract law to

determine the proper standard of review.  *See Firestone Tire & Rubber Co.*, 489 U.S. at 112. The court then accurately reasoned that our decision in *O'Kelly*, as well as the Plan's choice-of-law provision, required it to apply New York contract law specifically to interpret the Plan's provisions.  The district court properly noted that New York contract law allowed it to set aside Matrix's decision only if it was made in bad faith, was arbitrary, or was the result of fraud.  *See Welland*, 2003 WL 22973574, at *11.  Under New York contract law, the court could not assume Matrix's role as Plan Administrator to re-evaluate its decision.  *See id.*  In accordance with this requirement, the court necessarily could not permissibly review Matrix's decision based on information that was not available to Matrix when it denied Martin's benefits.  *See id.*; *Taylor*, 2025 WL 3640397, at *3.

The district court's conclusion was correct.  Generally, a court may not assess the reasonableness of a plan administrator's decision based on evidence that the administrator did not have before it.  *See Taylor*, 2025 WL 3640397, at *3; *see also Welland*, 2003 WL 22973574, at *11.  It would have been "inappropriate" for the court to "judge Matrix's determination based on information not available to Matrix at the time it rendered the determination."  *Taylor*, 2025 WL 3640397, at *3.  Still, Martin emphasizes that the court erred because it treated her action like an ERISA case by denying her discovery requests when the court would not have done the same under New York law.  Other plaintiffs contesting Matrix's denials pursuant to this same Plan have unsuccessfully made similar arguments.  *See, e.g.*, *id.* ("[Plaintiff] argues the arbitrary and capricious standard of review impermissibly grafts ERISA deference onto a Plan that Congress explicitly exempted from ERISA.").

Contrary to Martin's assertions, New York law has long limited judicial review of a non-ERISA plan administrator's denial of benefits where the plan grants its administrator significant discretion.  *See Gehrhardt*, 581 F.2d at 11 (collecting cases).  And this law compels us to apply the arbitrary-and-capricious standard of review, which is similar to the standard of review that would have applied to Matrix's decision if the Plan here were governed by ERISA *and* vested Matrix with significant discretion.  *Compare O'Kelly*, 2023 WL 4045223, at *4 (deciding in the non-ERISA context that the district court "was required to review the full administrative record" and "properly based its grant of summary judgment" on the record to apply the arbitrary-and-

capricious standard of review), *with Seiser v. UNUM Provident Corp.*, 135 F. App'x 794, 796–98 (6th Cir. 2005) (deciding in the ERISA context that the district court's review was limited to the administrative record to apply the arbitrary-and-capricious standard of review); *Killian v. Healthsource Providence Adm'rs, Inc.*, 152 F.3d 514, 522 (6th Cir. 1998) (the district court was "strictly limited to a consideration of the information actually considered by the administrator").

The district court thus did not erroneously apply the standard under ERISA to deny Martin's request for discovery.  It properly applied New York contract law's standard for plans that grant their administrators significant discretion, and this standard is similar to the standard applicable to such plans under ERISA.  *See Firestone Tire & Rubber Co.*, 489 U.S. at 112 (suggesting that state contract law applies to non-ERISA disputes); *Seiser*, 135 F. App'x at 796–98 (describing the standard under ERISA).  Therefore, the district court was correct to deny Martin's request for open discovery because it could not review Matrix's decision based on information that was not available to Matrix when it denied Martin's benefits.

**2.**

Martin also challenges the district court's denial of her requests for limited discovery.  In its *first* order denying Martin's request for discovery, the court included a footnote stating that Martin was "not foreclosed from seeking limited discovery upon a written showing of an applicable exception."  DE 17, Order, Page ID 1809 n.1.  The court was referring to the "good cause" exception, under which a court has "discretion to admit evidence outside the record upon a showing of good cause."  DE 24, Order, Page ID 1917 (quoting *Biomed Pharms., Inc. v. Oxford Health Plans (N.Y.), Inc.*, 831 F. Supp. 2d 651, 658 (S.D.N.Y. 2011)).  On appeal, Martin relies on *Metropolitan Life Insurance Co. v. Glenn*, 554 U.S. 105 (2008), to claim that "no evidentiary threshold or showing is required when seeking discovery on a procedural challenge or a conflict of interest," so the district court should have fully granted her motion.  *See* CA6 R. 16, Appellant Br., at 35.

As we have noted, the arbitrary-and-capricious standard of review applies both where an ERISA plan vests significant decision-making authority in an administrator and here, where a non-ERISA plan vests such authority in the administrator.  *See O'Kelly*, 2023 WL 4045223, at

\*4. So, we may view as instructive ERISA case law that interprets when a district court may exercise its discretion to look beyond the administrative record. *See id.* (although the plaintiff's case was a "non-ERISA matter," the court "still was required to review the full administrative record that Matrix used in its review in order to rule on arbitrariness"); *see also Wagner v. First Unum Life Ins. Co.*, 100 F. App'x 862, 864 n.1 (2d Cir. 2004) (order).

The district may look to evidence beyond the record "only if that evidence is offered in support of a procedural challenge to the administrator's decision, such as an alleged lack of due process afforded by the administrator or alleged bias on its part." *Moore v. Lafayette Life Ins. Co.*, 458 F.3d 416, 430 (6th Cir. 2006) (citation modified). Relevant allegations might concern the conflict of interest that arises from an entity's dual role as a plan administrator and as a payor of plan benefits; indeed, the Supreme Court has noted that this is one factor we should consider when determining whether a plan administrator has abused its discretion. *Metro. Life Ins. Co.*, 554 U.S. at 112, 116–17. Such a conflict exists where a plan administrator "both evaluates claims for benefits and pays benefits claims." *Id.* at 112. This conflict of interest is not the sole type of allegation that could warrant limited discovery outside the administrative record. *See, e.g., Moore*, 458 F.3d at 430. But mere allegations of bias do not justify limited discovery. *Johnson*, 324 F. App'x at 466. Until a due process violation is "at least colorably established, additional discovery beyond the administrative record into a plaintiff's denial of benefits claim is impermissible." *Moore*, 458 F.3d at 431; *see also Wilkins v. Baptist Healthcare Sys., Inc.*, 150 F.3d 609, 619 (6th Cir. 1998) (Gilman, J., concurring).

First, the district court did not abuse its discretion by rejecting Martin's requests for limited discovery because Martin insufficiently alleged a conflict of interest. The court correctly decided that the Supreme Court's admonition in *Metropolitan Life Insurance* regarding a plan administrator also serving as a payor is inapplicable here. The Plan does not allow the Bank to make benefits determinations—the Plan Administrator makes these determinations through Matrix. Thus, there is no inherent conflict here, as the administrator does not "both evaluate[] claims for benefits and pay[] benefits claims." *See Metro. Life Ins. Co.*, 554 U.S. at 112; *Johnson*, 324 F. App'x at 467 (*Metropolitan Life Insurance* applies when "the defendant is both the administrator and the payor under an ERISA plan"). And the court correctly noted that

Martin offered only speculative allegations of a conflict of interest regarding the Bank, Matrix, and the Plan. The court therefore did not abuse its discretion because it properly applied our law regarding limited discovery. *See Moore*, 458 F.3d at 431.

Second, Martin insufficiently alleged bias or other indicators of a procedural defect in Matrix's determination. The thrust of Martin's argument before the district court was that Matrix "discounted" medical evidence favorable to her, and that its reviewers had a "track history of being in the consultant circuit" for Matrix's review of LTD cases, so they were financially biased. DE 21, Pl.'s Mot. Limited Disc., Page ID 1820, 1829. But the district court properly concluded that Matrix considered Martin's physicians' opinions, and it reasonably determined that Matrix's payments for independent physicians to determine claimants' eligibility does not reflect "bias of these physicians in favor of Matrix." DE 24, Order, Page ID 1914–15, 1919. Martin's arguments thus amount to mere allegations of bias and cannot suffice to warrant limited discovery under our law. *See Johnson*, 324 F. App'x at 466. Therefore, the district court properly denied Martin's requests for limited discovery because Martin failed to sufficiently allege a conflict of interest or a distinct procedural defect. *See Metro. Life Ins. Co.*, 554 U.S. at 112; *Moore*, 458 F.3d at 431.

## C.

Finally, Martin claims that the district court improperly granted the defendants judgment on the administrative record because Matrix arbitrarily denied Martin LTD benefits.[2] Martin specifically asserts that Matrix's decision was arbitrary for five reasons. First, Matrix's three reviewing physicians, Erdos, Glass, and Sonne, did not consider Riffle's and Dornan's rebuttal opinions. Second, the district court misread the record when it determined that Matrix reviewed Martin's treating physicians' opinions. Third, a recording that Martin took of Moufawad, Matrix's independent reviewing physician, shows that he mischaracterized Martin's statements and clinical presentation. Fourth, Matrix's failure to consider Martin's treating opinions rendered Matrix's decision arbitrary. Fifth, Matrix impermissibly disregarded Martin's subjective medical evidence.

---

[2]Martin argued only that Matrix's determination was arbitrary, rather than made in bad faith or fraudulently.

Each of Martin's assignments of error, in short, attempts to show that the court failed to recognize Matrix's omission of Martin's treating physicians' opinions and that this omission was arbitrary. As we explain, Martin's appellate briefs focused on these narrower issues without addressing our core inquiry: whether Matrix offered a "reasoned explanation, based on the evidence," for its denial. *See Likas v. Life Ins. Co. of N. Am.*, 222 F. App'x 481, 487 (6th Cir. 2007). We reject Martin's arguments, as Matrix offered such an explanation for its denial and considered Martin's medical evidence, so it did not arbitrarily deny Martin LTD benefits.

**1.**

We begin with our core inquiry and analyze, as a whole, Matrix's denial. Once again, we may look to ERISA case law applying the arbitrary-and-capricious standard of review to evaluate Matrix's denial under a non-ERISA plan that vests discretionary authority in an administrator. *See O'Kelly*, 2023 WL 4045223, at *4. We may do so because that standard in ERISA case law matches the arbitrary-and-capricious standard of review under New York contract law that governs the Bank's Plan here. *See id.* at *3–4; *Welland*, 2003 WL 22973574, at *11. Because arbitrary-and-capricious review of a plan administrator's denial of benefits is "highly deferential," we do not upset a denial "so long as it is possible to offer a reasoned explanation, based on the evidence, for that particular outcome." *Likas*, 222 F. App'x at 487. And an administrator's reasoned explanation for its determination necessarily applies the Plan's terms to reach its determination. *See, e.g.*, *Wilkins*, 150 F.3d at 614.

In justifying their determinations, plan administrators may use their own medical experts' opinions, but they may also face claimants' treating physicians' opinions. *See generally Black & Decker Disability Plan v. Nord*, 538 U.S. 822, 832 (2003) ("[I]f a consultant engaged by a plan may have an 'incentive' to make a finding of 'not disabled,' so a treating physician, in a close case, may favor a finding of 'disabled.'"). In evaluating a claimant's eligibility, plan administrators "are not obliged to accord special deference to the opinions of treating physicians" or to "credit the opinions of treating physicians over other evidence relevant to the claimant's medical condition." *Id.* at 825. Still, such administrators may not "arbitrarily refuse to credit a claimant's reliable evidence," including treating opinions, but they have no other

"burden of explanation when they credit reliable evidence that conflicts with a treating physician's evaluation." *Id.* at 834.

If a plan administrator shows that it relied on "the medical opinion of one doctor over that of another" in making its determination, we may find that the administrator's decision was not arbitrary and capricious because it offered a "reasoned explanation, based upon the evidence," for its decision. *See McDonald v. W.-S. Life Ins. Co.*, 347 F.3d 161, 169 (6th Cir. 2003). Necessarily, then, an administrator's decision not to consider treating physicians' opinions is arbitrary and capricious where the administrator has failed to offer a "reasoned explanation, based on the evidence, for its outcome," and we are "unable to infer such an explanation based on the evidence." *Williams v. Int'l Paper Co.*, 227 F.3d 706, 713 (6th Cir. 1998) (quotation omitted). We have previously found a denial arbitrary and capricious where an administrator relied only on an independent medical expert's file review that was "inadequate in several crucial respects," *Kalish v. Liberty Mut./Liberty Life Assurance Co. of Bos.*, 419 F.3d 501, 510 (6th Cir. 2005), and where a defendant had a conflict of interest as both an administrator and a payor but never sought independent medical review, *Evans v. UnumProvident Corp.*, 434 F.3d 866, 879 (6th Cir. 2006).

Here, by thoroughly reviewing both the "quality and quantity of the medical evidence and the opinions on both sides of the issues," the district court properly determined that Martin failed to show that Matrix breached the Plan by arbitrarily denying Martin benefits. *See McDonald*, 347 F.3d at 172. Like the district court, we reach this conclusion based on Matrix's thorough letters explaining its denial and affirmance, and the ample evidence in the administrative record that supports Matrix's denial of benefits. *See Calvert v. Firstar Fin., Inc.*, 409 F.3d 286, 292, 295–97 (6th Cir. 2005).

Matrix's initial letter denying Martin benefits stated that, as of April 13, 2022, Martin did not meet the "Plan's Own Occupation definition of Total Disability," so LTD benefits were not payable. *See* DE 26, AR, Page ID 2046, 2048. In this letter, Matrix noted that it reviewed medical information from *twelve* of Martin's treating physicians, that Dornan's examination of Martin on April 15 was unremarkable, and that Bucklan's medical notes from April 22 showed that Martin's "headache intensity [was] improving with the Botox treatment[.]" *Id.* at 2047–48;

*see id.* at 2082, 2086 (showing that Bucklan noted that Martin's "disability is significantly improved and she is not missing work, fatigue is improved, [and] severity is improved"). Matrix therefore found that the medical evidence revealed no "worsening reported symptoms or a change in symptoms" or other medical deterioration that would have precluded her from working as of April 13. *See id.* at 2048.

Based on Martin's medical evidence, Matrix also determined that Martin was not "Totally Disabled" in the time preceding April 13, 2022, as Martin worked with long-haul COVID for months and even experienced an improvement in her symptoms. *See id.* Indeed, Matrix noted in both its initial letter and its letter affirming the denial that Martin's symptoms of long-haul COVID-19 began after her second COVID-19 infection, which was in December 2021, and that she worked between December 2021 and April 13, 2022. *See id.* at 2058 ("Your client's working through and until April 13, 2022, demonstrated, in and of itself, that they were fully capable of [working on a full-time, consistent basis], and not *Totally Disabled* by definition." (emphasis in original)). Matrix properly determined based on Martin's proven ability to work at her "own job" that she was not entitled to benefits. DE 13-1, Plan, Page ID 1655. And Matrix did not rest its determination on a "mere possibility" that Martin could work at her job, "in light of overwhelming evidence to the contrary." *See McDonald*, 347 F.3d at 170–71. Instead, it identified Martin's proven continued ability to work despite her condition and her medical improvement around the time she took leave, thereby giving a "reasoned explanation" for its denial. *See id.* at 169; *Likas*, 222 F. App'x at 487.

Matrix even addressed Dornan's assertion that Martin could not perform any work function given her diagnoses of long-haul COVID-19, malaise, fatigue, and migraine. It reasoned that Matrix's reviewing physician, Moufawad, had reached a contrary conclusion: Based on both Martin's medical information and her previously demonstrated ability to work with long-haul COVID-19, Martin was not physically restricted or limited in functioning such that she could not work at her job. Matrix's affirmance of its denial reached this same conclusion and explained that Martin's exam on April 15 was "unremarkable," her exam on April 22 showed her to be "stable to improving with the Botox injection," and it was "not clear

from the medical records reviewed" what had changed as of April 13 to preclude Martin from working.  DE 26, AR, Page ID 2056–57.

Matrix also noted that it commissioned three independent physicians, Erdos, Glass, and Sonne, to review the medical evidence on file, and none of them found that Martin had a physical restriction impeding her from working in her role at the Bank.  Glass noted that Martin showed signs of improvement on April 14, Sonne found that Martin's prognosis was "excellent" and she "certainly could have worked" as of April 13, and Erdos identified no impairment in Martin's psychiatric functional ability as of April 13.  *Id.* at 3566, 3599, 3609.  Administrators may not "arbitrarily refuse to credit a claimant's reliable evidence," but Matrix "credit[ed] reliable evidence" that conflicted with but addressed Martin's treating physicians' opinions.  *See Black & Decker Disability Plan*, 538 U.S. at 834.  By relying on Moufawad's and these independent physicians' opinions, Matrix relied on "the medical opinion of one doctor over that of another" to make its determination and it provided a "reasoned explanation" for doing so.  *See McDonald*, 347 F.3d at 169.  Matrix's denial was not arbitrary or capricious.

Martin, to be sure, has experienced difficult symptoms associated with long-haul COVID-19.  She told a doctor that "many things" feel "wrong with her body now," and she cannot find "real answers or solutions[.]"  DE 26, AR, Page ID 2093.  And Martin has spoken at length with medical professionals about her migraines, sensitivity to light, fatigue, brain fog, and sensations of physical pain.  But Martin's claim that the defendants breached their contract with her depends on the Plan's terms, and under its terms Martin was entitled to LTD benefits only upon a showing that she was "Totally Disabled."  *See* DE 13-1, Plan, Page ID 1655.  We conclude that Matrix reasonably decided that Martin was not "Totally Disabled," as Martin showed her ability to work with long-haul COVID for months, her condition improved around the time she took leave, and Matrix relied on several medical experts' determinations that Martin was able to work around that time.  *See* DE 26, AR, Page ID 2048; *McDonald*, 347 F.3d at 169; *Black & Decker Disability Plan*, 538 U.S. at 834.

**2.**

We next address Martin's arguments regarding the district court's decision to uphold Matrix's denial. Rather than address the substance of Matrix's determination, her ability to work between December 2021 and April 2022, or her improvement in symptoms, Martin presents five narrow arguments on appeal regarding Matrix's and its physicians' failures to exhaustively assess each piece of her medical evidence. First, Martin claims that Erdos, Glass, and Sonne did not specifically consider Riffle's treating opinion from March 17, 2023, and Dornan's treating opinion from March 23, 2023.

But under the Supreme Court's precedent and our own, we may not disturb Matrix's decision merely because its reviewing physicians did not acknowledge or respond to Martin's physicians' opinions or two particular letters they wrote. Indeed, *Matrix* could not arbitrarily refuse to credit one of Martin's physicians' opinions, but it could rely on other medical opinions to provide a reasoned explanation. *See Black & Decker Disability Plan*, 538 U.S. at 834. Importantly, Matrix did not ignore Martin's physicians' opinions; as we have noted, Matrix reviewed them, even if Erdos, Glass, and Sonne did not address each of Martin's physicians' rebuttals to Moufawad's reports. And Matrix relied on opinions by Moufawad, Erdos, Glass, and Sonne to make its determination. We cannot accord special weight to any one physician's opinion or rebuttal, and we cannot impose on administrators a separate burden of proof when they credit one treating opinion over another. *See id.*; *McDonald*, 347 F.3d at 170–71. Moreover, we decline to create a rule that an administrator or its reviewing physicians must categorically respond to *each* communication or rebuttal by the claimant's physicians when the administrator has already acknowledged the claimant's physicians' opinions and provided a reasoned explanation.

Martin's remaining arguments fail for similar reasons. Her second argument is that the district court incorrectly found that Matrix reviewed Martin's treating physicians' opinions. The district court erred, according to Martin, because it misguidedly stated that Sonne had referenced these opinions. As we have shown, Matrix's decision is not arbitrary just because one of its medical reviewers did not directly rebut one of Martin's physicians' letters, even if these letters "directly rebutted" Moufawad's report. *See* CA6 R. 16, Appellant Br., at 50. An administrator

should not arbitrarily ignore a treating opinion by the claimant's physician. *Black & Decker Disability Plan*, 538 U.S. at 834. And an administrator should give a "reasoned explanation" for its reliance on "the medical opinion of one doctor over that of another" in its determination. *See McDonald*, 347 F.3d at 169. Yet there is no requirement that an administrator's independent medical reviewers engage in direct argument with a claimant's medical reviewers.

Third, Martin claims that a recording that she took during her examination with Moufawad reflects that he mischaracterized her statements and clinical presentation, and thus that Matrix's alleged failure to consider all the evidence presented was not harmless error. We have concluded, however, that Matrix adequately considered the evidence presented by Martin and arrived at a reasoned decision to deny her claim. Consequently, we need not engage in the harmless-error analysis or address the district court's alternative holding on those grounds.

Fourth, Martin similarly contends that Matrix's failure to consider her physicians' treating opinions rendered Matrix's decision arbitrary, especially in light of the transcript of her recording. We have already explained that Matrix's determination was not arbitrary, as Matrix considered these treating opinions and Matrix's independent medical examiners were not required to respond to Martin's physicians' rebuttals. *See Black & Decker Disability Plan*, 538 U.S. at 834; *McDonald*, 347 F.3d at 169. Therefore, this argument fails.

Fifth, Martin claims that Matrix disregarded her subjective medical evidence. But that is not an accurate claim. As Martin admits, her treating physicians diagnosed her with various conditions based on her subjective reports. Matrix reviewed the diagnoses from these physicians and a host of Martin's subjective reports, including descriptions of her conditions to her doctors. In fact, Matrix agreed with Martin's subjective reports that she was suffering from pain, fatigue, and impairment. But Martin's own actions ultimately convinced Matrix that she was not "Totally Disabled." *See* DE 26, AR, Page ID 2048–49, 2058. Between December 2021 and April 13, 2022, Martin continued to work at the Bank. And at her appointments around the date she claimed to be "Totally Disabled," she did not report worsening symptoms. *See id.* Martin's own subjective evidence, in addition to the objective evidence that Matrix considered, provided Matrix a sufficient basis to deny her benefits. Thus, Martin's final argument on appeal fails.

**IV.**

For the foregoing reasons, we affirm the district court.